NAACP, DETROIT BRANCH; the Guardians, Inc.; Brady Bruenton; Cynthia Martin; Hilton Napoleon; Sharron Randolph; Betty T. Roland; Grant Battle; Cynthia Cheatom; Evin Fobbs; John Hawkins; Helen Poelinitz; on behalf of themselves and all others similarly situated, Plaintiffs,

v.

DETROIT POLICE OFFICERS ASSOCIATION (DPOA); David Watroba, President of the DPOA; City of Detroit, a Michigan Municipal Corporation; Mayor Coleman A. Young; Detroit Police Department; Board of Police Commissioners; Chief William Hart; Governor William Milliken; and the Michigan Employment Relations Commission, Defendants.

Civ. A. No. 80–73693.

United States District Court, E.D. Michigan, S.D.

Oct. 21, 1985.

1174

Frank W. Jackson, Asst. Corp. Counsel, Detroit, Mich., Daniel B. Edelman, Washington, D.C., Terri L. Hayles, Asst. Corp. Counsel, Detroit, Mich., for defendants City of Detroit, Mayor Coleman A. Young, Detroit Police Dept., Bd. of Police Com'rs, Chief William Hart.

Walter S. Nussbaum, Mara Kalnins-Ghafari, Detroit, Mich., for defendants Detroit Police Officers Ass'n, David Watroba, President of DPOA.

Thomas Atkins, Brooklyn, N.Y., Barnhart and Mirer by Jeanne Mirer, Gary Benjamin, James W. McGinnis, Detroit, Mich., for plaintiffs.

## OPINION

GILMORE, District Judge.

Following trial on this matter,[1] plaintiffs filed a petition for attorney fees and costs to be assessed against defendants Detroit Police Officers Association (DPOA) and the City of Detroit pursuant to 42 U.S.C. § 1988, which states in pertinent part:

In any action or proceeding to enforce a provision of sections 1977, 1978, 1979, 1980 and 1981 of the Revised Statutes [42 U.S.C. §§ 1981–1983, 1985, 1986] ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

On January 17, 1985, the Court held an evidentiary hearing on the motion for fees, and it became clear that the parties disputed the validity, appropriateness and compensability of both the fees and costs sought by plaintiffs. In addition, the DPOA argued that no fees should be assessed against it since the plaintiffs had not prevailed against it in a §§ 1981, 1982, 1983, or 1985 claim.

The Court referred the matter to Magistrate Komives, as a Special Master, to conduct an evidentiary hearing on the following issues:

A. As to fees sought:
1. The actual time being sought by each of the claimants.
2. The appropriateness of the time claimed, as demonstrated by relevant documentation.
3. The extent to which there is impermissible duplication.
4. The extent to which the time for which compensation is sought is reasonable.
5. Specification of which time claimed is allocable to the City defendants, the DPOA, or both.
6. Circumstances pertaining to adjusting the lodestar fee.
7. With the exception of the appropriate rate to be applied, which the Court shall decide, determinations about any other factual matters relating to

fees that the parties may put into dispute.

B. As to costs:
1. Determination of what costs are being claimed.
2. Determination of the appropriateness of the costs claimed, in light of relative documentation.
3. Allocation of costs to the DPOA, City defendant, or both.
4. The extent to which the costs claimed are reasonable.
5. Any other factors relating to costs that the plaintiffs may put into dispute.

■ The Magistrate held six days of hearings, and out of the morass of factual disputes prepared an extremely thorough and helpful Report and Recommendation, as well as exhaustive findings on the factual issues before him. In view of the fact that the referral was to the Magistrate as a Special Master, this Court will review the Magistrate's findings under a clearly erroneous standard. *See Brown v. Wesley's Quaker Maid*, 771 F.2d 952 (6th Cir.1985.)

In addition, there are legal issues not referred to the Magistrate that this Court must determine. These include the threshold question whether the plaintiffs were prevailing parties in this action, the question whether the DPOA is liable for plaintiffs' fees and costs, and the question of how the fees and costs award should be allocated between the two defendants. Part I of this opinion will discuss these issues. Part II will determine the reasonable rate per hour to be paid to the various attorneys in the case. Part III will determine the number of reasonably compensable hours. Part IV will determine costs.

I

In order to recover attorney fees under § 1988, a plaintiff must be a prevailing party. In *Hensley v. Eckerhart*, 461 U.S.

1. This civil rights case arose out of the layoff of black police officers in Detroit in 1979 and

1980. The opinion is reported at 591 F.Supp. 1194 (E.D.Mich.1984).

424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Court pointed out:

> A plaintiff must be a "prevailing party" to recover an attorney's fee under § 1988. The standard for making this threshold determination has been framed in various ways. A typical formulation is that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (CA1 1978). This is a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is "reasonable."

*Id.* at 433, 103 S.Ct. at 1939.

■ Although the Magistrate made specific findings regarding the extent to which plaintiff prevailed, the question of whether plaintiff is a prevailing party is a legal question not subject to the clearly erroneous review standard used for the Magistrate's Findings of Fact. Nonetheless, the Court agrees with the Magistrate that plaintiffs did prevail against both the City of Detroit and the DPOA.

■ The plaintiffs had significant successes against the City. The Court determined that the City had breached its affirmative obligations to the plaintiffs, in violation of their rights under the Fourteenth Amendment. The Court ordered significant relief, including the recall of all black police officers laid off in 1979 and 1980, and the recall of all white officers laid off. The Court further enjoined the City from suspending, discharging or laying off any police officers in the future, except for disciplinary reasons, without prior approval of the Court. Finally, the Court determined that the City had an affirmative duty to take all necessary steps to eliminate all vestiges of prior employment discrimination in the Detroit Police Department.

The City argues that the plaintiffs in fact did not prevail against them because it succeeded in it biggest objective, that is,

the defense against any money claims. The City argues that, at most, plaintiffs won an acceleration of recalls, since the City intended to make some recalls anyway. The Court rejects this argument. There is no question but that the plaintiffs prevailed against the City. The fact that money claims and back pay were not ordered does not mean that plaintiffs were not prevailing parties. Plaintiffs succeeded in many significant issues in the litigation, which achieved much of the benefit the parties sought in bringing suit. Therefore, under *Hensley,* the plaintiffs were prevailing parties against the City of Detroit.

■ By the same token, plaintiffs were prevailing parties against the DPOA. The Court found that the DPOA breached its duty of fair representation under Michigan law. This was a significant issue. The Court ordered, as a remedy of this breach of duty, the establishment of reasonable representation of black officers in the leadership structure of the DPOA within 12 months of the opinion. The DPOA really does not argue that plaintiffs did not prevail, and as a threshold matter it is clear that plaintiffs were prevailing parties against the DPOA. The DPOA argues, rather, that no fees should be awarded against it because it was not held liable under § 1981, or any other civil rights statute.

■ The Court rejects the DPOA's argument that plaintiffs cannot recover attorney fees against it under § 1988 because it was not held liable for any violation of §§ 1981, 1983 or 1985. The resolution of this question requires an analysis of the Court's holding in the underlying case, as well as analysis of the legislative history of § 1988 and the cases interpreting § 1988.

In its opinion deciding this case, *NAACP v. Detroit Police Officers Association,* 591 F.Supp. 1194 (E.D.Mich.1984), the Court found that under Michigan law the DPOA breached the duty of fair representation owed to its black members. In discussing the DPOA's breach, this Court said:

This finding of liability of the DPOA is not predicated upon any legal finding that its defense of a bona fide seniority system was per se wrong. It is recognized that there have been no prior judicial findings of intentional racial discrimination against the DPOA as there were against the City of Detroit, and it is well recognized by this Court that Title VII protects from liability bona fide seniority systems. *See Teamsters* and *Stotts, supra*. It was the DPOA's action *as a whole*, not the defense of any particular position, that was unreasonable and breached the duty of fair representation here.

*Id.* 1219.

As to plaintiffs other claims, the Court held:

The Court finds no liability of the DPOA under the Thirteenth Amendment. It has found no case law applying to the Thirteenth Amendment under the facts of this case, and declines to do so here. *The Court finds no reason to consider the claim under 42 U.S.C. 1981 in light of the result reached here.* The Court finds no violation of 42 U.S.C. § 1985(3).

*Id.* at 1220 (emphasis added).

The legislative history of § 1988 indicates that the Congress intended fees to be awarded in such situations. In *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980), the Supreme Court discussed this legislative history in a footnote:

The legislative history makes it clear that Congress intended fees to be awarded where a pendent constitutional claim is involved, even if the statutory claim on which the plaintiff prevailed is one for which fees cannot be awarded under the Act. The Report of the Committee on the Judiciary of the House of Representatives accompanying H.R. 15460, a bill substantially identical to the Senate bill that was finally enacted, stated:

To the extent a plaintiff joins a claim under one of the statutes enumerated in H.R. 15460 with a claim that does not allow attorney fees, that plaintiff, if it prevails on the non-fee claim, is entitled to a determination on the other claim for the purpose of awarding counsel fees. *Morales v. Haines*, 486 F.2d 880 (7th Cir.1973). In some instances, however, the claim with fees may involve a constitutional question which the courts are reluctant to resolve if the non-constitutional claim is dispositive. *Hagans v. Lavine*, 415 U.S. 528 [94 S.Ct. 1372, 39 L.Ed.2d 577] (1974). In such cases, if the claim for which fees may be awarded meets the "substantiality" test, *see Hagans v. Levin, supra; United Mine Workers v. Gibbs*, 383 U.S. 715 [86 S.Ct. 1130, 16 L.Ed.2d 218] (1966), attorney's fees may be allowed even though the court declines to enter judgment for the plaintiff on that claim, so long as the plaintiff prevails on the non-fee claim arising out of a "common nucleus of operative fact." *United Mine Workers v. Gibbs, supra*, at 725 [86 S.Ct. at 1138]. H.R.Rep. No. 94–1558, p. 4, n. 7 (1976).

*Id.* n. 15 at 132, 100 S.Ct. n. 15 at 2576.

The *Maher* Court went on to note, in the text of its opinion:

We agree with the courts below that Congress was acting within its enforcement power in allowing the award of fees in a case in which the plaintiff prevails on a wholly statutory, non-civil-rights claim pendent to a substantial constitutional claim or in one in which both a statutory and a substantial constitutional claim are settled favorably to the plaintiff without adjudication. As the Court of Appeals pointed out, such a fee award "furthers the Congressional goal of encouraging suits to vindicate constitutional rights without undermining the longstanding judicial policy of avoiding unnecessary decision of important constitutional issues." [*Maher v. Gagne*], 594 F.2d [336], at 342 [ (2nd Cir.1979) ]. It is thus an appropriate means of enforcing substantive rights under the Fourteenth Amendment.

*Id.* at 132–33, 100 S.Ct. at 2576–77.

A number of circuit court cases have approved the award of attorney fees where

plaintiffs have prevailed on state claims. They have generally relied upon the legislative history cited in *Maher, supra.*

In *Seals v. Quarterly County Court,* 562 F.2d 390 (6th Cir.1977), the court affirmed a fee award where the plaintiffs prevailed only on a voting rights claim under state law but had raised a substantial federal claim based on the same operative facts. It relied upon a footnote to a House Report on the Bill enacting § 1988, and said:

> Nonetheless, the language quoted above appears to us to be a clear-cut indication that Congress considered the exact problem with which we are now confronted and provided an express indication as to how the general language of the 1976 statute was intended to be applied.
>
> In our instant case, fees could clearly have been awarded if Plaintiffs had prevailed on their federal constitutional claim. And, of course, for the reasons stated above, they can be awarded under present facts (i.e., the District Court's granting of relief on the alternative state claim basis).

*Id.* at 394.

In *Williams v. Thomas,* 692 F.2d 1032 (5th Cir.1982), *cert. denied,* 462 U.S. 1133, 103 S.Ct. 3115, 77 L.Ed.2d 1369 (1983), the court awarded fees where the plaintiff, a prisoner, sued a deputy for assault and battery and for a violation of § 1983. The jury found that the deputy committed assault and battery but did not violate § 1983 because he was acting in good faith. The court noted that the courts, as a matter of policy, will affirm cases on pendent claims where possible rather than reaching constitutional claims, and noted that allowing fees in such cases furthers a congressional goal of encouraging suits to vindicate civil rights while still avoiding unnecessary constitutional decisions. It said:

> These cases demonstrate that the federal courts are aware of the fact that often a court will affirm a judgment on a

pendent, noncivil rights claim when to do so will allow it to avoid an unnecessary decision on a difficult constitutional issue. For example, in this case, this Court has refused to decide whether the good faith defense was improperly rejected by the district court since Williams would recover compensatory damages under the pendent claim, regardless of this Court's decision on the good faith issue. Moreover, by allowing a recovery of attorneys' fees "the congressional goal of encouraging suits to vindicate constitutional rights [is furthered] without undermining the well-settled judicial policy of avoiding unnecessary decisions [on] important constitutional issues." *Maher,* 100 S.Ct. at 2577.

*Id.* at 1036.

There are many cases awarding fees where a plaintiff prevailed on an alternate claim that arose out of a common nucleus of operative facts.[2] The basic test for determining whether fees should be awarded when a party prevails upon the non-civil rights portion of a case where the civil rights issue has been properly raised is whether the noncivil rights claim arose out of a common nucleus of operative facts. If it did, then plaintiff is entitled to recover attorney fees, even though the Court did not reach or rule on the civil rights claim.

Here, the Court found that the DPOA breached its duty of fair representation, and awarded substantial relief to plaintiffs. The Court did not reach plaintiffs' claim under § 1981 because that claim was mooted by the finding of the breach of the duty of fair representation. Plaintiffs' § 1981 claim and duty of fair representation claim arose out of a common nucleus of operative facts, i.e. the DPOA's actions *as a whole* with regard to the 1979 and 1980 layoffs of black officers. To hold that the DPOA is not liable for attorney fees in this case would be to unjustly deprive prevailing

---

**2.** *See Annot.* "Civil Rights Attorney Fees," 43 A.L.R.Fed. 243 at § 18; *see, e.g., Lund v. Affleck,* 587 F.2d 75 (1st Cir.1978); *Reel v. Arkansas*

*Department of Corrections,* 672 F.2d 693 (8th Cir.1982); *Burchett v. Bower,* 470 F.Supp. 1170 (D.Ariz.1979).

plaintiffs of their right to attorney fees under § 1988.[3]

*Smith v. Robinson*, 468 U.S. ——, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), relied upon by defendants, does not hold to the contrary. In *Smith*, the Court pointed out that where petitioners present entirely different claims for different relief and prevail only on the non-fee claim, they are not entitled to a fee award simply because the other claim was a constitutional claim. The Court stated, however:

> As the legislative history illustrates and as this Court has recognized, § 1988 is a broad grant of authority to courts to award attorney's fees to plaintiffs seeking to vindicate federal constitutional and statutory rights. (citations omitted) Congress did not intend to have that authority extinguished by the fact that the case was settled *or resolved on a nonconstitutional ground.*

468 U.S. at ——, 104 S.Ct. at 3466 (emphasis added).

The *Smith* court went on to add that the statute upon which the plaintiff prevailed, the Education to the Handicapped Act, was so comprehensive that it was the exclusive remedy for plaintiff's claims. Thus, in *Smith*, plaintiff had no § 1983 claim at all. The Court further held that plaintiff's other claim, a due process claim regarding the lack of impartiality of a state hearing officer, was so entirely different from plaintiff's substantive claim that no fee would be awarded based on it. This is no different than the requirement that fees only be awarded when a plaintiff prevails on non-fee claims, if the fee and the non-fee claim arise out of a common nucleus of operative facts.

■ Nor does *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), require a different result. Although *Hensley* recognizes that the degree of a plaintiff's success is an important factor in determining a reasonable attorney fee, *Hensley* also clearly recognized that fee awards are appropriate where fee and non-fee claims involve a common core of facts based upon related legal theories. The Court said:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants ... counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved" ... The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.
>
> *In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories.* Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. *Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.*

*Id.* at 433–35, 103 S.Ct. at 1939–40 (emphasis added).

And, in conclusion, the Court stated:

> Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised....

*Id.* at 440, 103 S.Ct. at 1943.

It is clear that plaintiffs' breach of the duty of fair representation claim was based on a common core of facts with its § 1981 claim. These claims were not "discrete."

---

**3.** *See* quote from *Maher, supra,* p. 1179.

**1182**

Therefore, even under *Hensley*, the plaintiffs are entitled to recover attorney fees against the DPOA.

◼ The DPOA might more appropriately have argued that the Court's rejection of the Thirteenth Amendment claim, the § 1983 claim, and the § 1985 claim against it on the merits required, under *Hensley*, a downward adjustment of the fee based on limited success. *Hensley* holds that the product of reasonable hours times a reasonable rate is the start, but not the end, of the determination of a reasonable fee under § 1988. A reasonable fee must also take into account the plaintiff's degree of success.

However, analysis of *Hensley* indicates that no such downward adjustment is warranted in this case. *Hensley* requires the Court to ask two questions in this regard:

First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Id.* at 435, 103 S.Ct. at 1940.

*Hensley* mandates that the amount of fee be reasonable in relation to the result obtained.

As the above discussion has made clear, plaintiffs' claims against the DPOA were related. Exercising its equitable judgment in the light of the considerations identified in *Hensley*, the Court finds as a matter of fact that plaintiffs achieved a level of success against the DPOA that makes the hours reasonably expended [4] a satisfactory basis for making a fee award against the DPOA.

The final threshold issue before the Court is the allocation of the fees and costs to be awarded against the City and the DPOA.

The Magistrate found that, prior to the February 22, 1984 summary judgment finding liability on the part of the City,[5] the effort expended by plaintiffs against the City and against the DPOA were 50–50. This finding of allocation is not clearly erroneous.

The Magistrate further found that, after February 22, 1984, the effort expended was 10% against the City and 90% against the DPOA, and based his findings on the following:

1. The issues remaining for trial were liability and remedy against the DPOA, and remedy only against the City.

2. Most of the case at trial went to the liability of the DPOA.

3. Plaintiffs' trial brief, findings of facts, and witnesses presented went mostly to the DPOA issues and not to the City.

4. In making its case against the City, the plaintiffs relied heavily on the City's own witnesses.

The Court finds that this allocation finding of 90/10 is clearly erroneous. The Magistrate, while looking at certain facts about the trial, failed to appreciate that the issue of remedy against the City took extensive trial time and trial preparation, and resulted in the establishment of important legal precedents.

A review of the transcript and opinion in this case clearly show that substantial time in the trial of the case, in the preparation for trial, and in the final briefing of the case was spent in presenting evidence and argument going to the remedy against the City of Detroit. After the general introduction, 11 printed pages of the opinion (591 F.Supp. 1199 to 1210) were devoted to a discussion of the remedy against the City and the details for its implementation. Another 11 printed pages of the opinion (591 F.Supp. 1210 to 1220) were devoted to discussing the liability and remedy against the DPOA.

This allocation of pages in the opinion is approximately accurate on the allocation of

---

**4.** See discussion of reasonably compensable hours, *infra* at 1189.

**5.** See the discussion of that finding in *NAACP v. DPOA,* 591 F.Supp. 1194, 1199 (E.D.Mich.1984).

time, effort, and energy expended by the Court and counsel.

The Court tried the case and is aware of the issues, and the time expended on each issue. It appears clear to the Court that 50% of the time, energy, preparation, trial, post-trial briefing and post-trial argument was devoted to the case against the City and 50% was devoted to the case against the DPOA, both before and after the February 1984 summary judgment.

Thus, the attorney fees and costs to be awarded against defendants will be divided equally between the City of Detroit and the DPOA.

## II

The attorneys in this case have made the following claims as a proper rate for their fees: Thomas Atkins, $200 an hour; Jeanne Mirer, $125 an hour; James McGinnis, $100 an hour; Michael Barnhart, $125 an hour, and Gary Benjamin $100 an hour. Samuel McCargo, who represented Mr. McGinnis in his claim for fees, has asked for attorney fees, but has failed to specify an hourly rate. Ronald Reosti, who represented Ms. Mirer and Mr. Benjamin in their claims for fees, has asked for a rate of $150 an hour. Each fee petitioner, other than Mr. Reosti and Mr. McCargo, has asked for 100% enhancement of his or her normal rate.

■ The issue of rates was not referred to the Magistrate, and he made no recommendation on the hourly rate to be received by fee claimants. The Magistrate did recommend an enhancement of 25%, based upon plaintiff's success in obtaining a ruling of first impression and upon a risk and contingency factor discussed in *Craik v. Minnesota State University Board*, 738 F.2d 348 (8th Cir.1984). As this finding is not a factual finding, it is not subject to the clearly erroneous standard, and the Court can review *de novo* the Magistrate's recommendation for enhancement.

42 U.S.C. § 1988 and other applicable civil rights fee-shifting statutes provide for a "reasonable" fee. As pointed out in *Hensley, supra:*

> The purpose of § 1988 is to ensure "effective access to the judicial process" for persons with civil rights grievances. H.R.Rep. No. 94–1558, page 1 (1976). Accordingly a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." S.Rep. No. 94–1011, page 4 (1976) (quoting *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400 [88 S.Ct. 964, 19 L.Ed.2d 1263] (1968)).

*Id.* at 429, 103 S.Ct. at 1937.

The *Hensley* Court further pointed out:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.

*Id.* at 433, 103 S.Ct. at 1939.

The Sixth Circuit in *Louisville Black Police Officers' Organization v. City of Louisville*, 700 F.2d 268 (6th Cir.1983), has provided district courts with some guidance in the difficult task of determining a reasonable hourly rate. In that case, the Court said that the standard for a reasonable hourly rate was the fair market value for the attorney's services, an important indicator of which is the hourly rate charged by the attorney. Courts may also look for guidance to the rates customarily charged in the community for similar services. *See also Northcross v. Board of Education of Memphis City Schools*, 611 F.2d 624 (6th Cir.1979).

■ The lead counsel throughout, and the person most responsible for the successful termination of this matter, was Thomas Atkins. Mr. Atkins is an experienced specialist in civil rights litigation who is admitted into practice in many district courts in the United States, many courts of appeal, the Supreme Judicial Court of Massachusetts, and the United States Supreme Court. From 1975 to 1980, he served as

special counsel to the national office of the NAACP for school desegregation, and was in charge of all such litigation nationally from 1977 to 1980. From April 1980 until July 1984, he served as general counsel of the national NAACP and the NAACP Special Contribution Fund. As general counsel, he was responsible for all litigation involving any of the NAACP's 2000 local units, 36 state units, and 7 regional units. He made the decision in 1980 to commit resources of the Special Contribution Fund to this case, and he made the decision to permit the Detroit branch of the NAACP to become a plaintiff. He is an excellent lawyer.

District courts are not restricted to the local market rate in determining the fair market value of an individual attorney's services. The Court is free to look at the national market or the market in the area of specialization to fairly compensate an attorney.[6] In Mr. Atkins' case, the relevant market is the national market in complex civil rights litigation.

Mr. Atkins' efforts in this case were demonstrably successful. He prevailed in establishing the liability of the City defendants for constitutional violations. He succeeded in establishing that the defendant DPOA failed in its duty of fair representation to black officers who were part of the union. The dollar value of plaintiffs' success can be estimated as at least $28,000,000, figured at the rate of $40,000 an officer in salary and fringe costs for 700 recalled officers.

Mr. Atkins claims that the proper rate for his services should be $200 an hour, plus enhancement. *Moore v. City of Des Moines, Iowa,* No. 82–460 (S.D.Iowa Oct. 24, 1984), *aff'd,* 766 F.2d 343 (8th Cir.1985). The Court finds as a matter of fact that $200 an hour is a reasonable fee for Mr. Atkins' services. The question of enhancement will be dealt with *infra.*

▇▇▇ Ms. Jeanne Mirer seeks an hourly rate of $125. From 1971 to 1975, she was in private practice in Cambridge, Massa-

chusetts, specializing in civil rights, labor, and constitutional law, and from 1976 to 1982 served as a staff attorney on the Law Reform Unit of the Wayne County Neighborhood Legal Services, specializing in employment law and affirmative action litigation. She has participated in many civil rights cases. Fairly recently, she entered into private practice and does not have a record as a private lawyer with an hourly charge equivalent to the $125 she is claiming.

In an unpublished opinion, *Davis v. Chrysler Corp.,* Civil Action No. 78–71233 (May 26, 1983), Judge Cohn of this court determined that the 1981 report of the Economics of Law Practice Committee of the State Bar of Michigan, 61 *Mich.B.J.* 118–119 (February 1982), reported the 1981 prevailing hourly rate in the Detroit area at $70 an hour. With this figure as a benchmark, he determined that $80 an hour was a reasonable rate, considering the skills and experience of attorney Mirer in that case. It is recognized that there has been some increase in attorney fees generally in this area since 1983 when Judge Cohn made that determination. Considering his determination in 1983, and the normal inflation of legal costs that have come in the last two years, the Court determines that, based upon Ms. Mirer's skill, experience, and background, a reasonable hourly rate for her in this case is $90 an hour.

▇▇▇ Michael Barnhart also seeks an hourly rate of $125. He received his J.D. in 1965, and from 1970 until 1973 was an adjunct professor of labor law at the Detroit College of Law. From 1970 to 1982, he worked in the Wayne County Neighborhood Legal Services office handling class action litigation, and from 1972 to 1982 supervised that office. During the period from 1976 to 1982, he was WCNLS Director of Litigation, supervising 36 attorneys, and has had experience in several complex class action lawsuits. In 1982, he went into private practice.

6. *Louisville Black Police Officers, supra.*

Given the 1981 prevailing rate, as noted in *Davis, supra* in 1983, and allowing for the normal inflation of the last two years, as well as for Mr. Barnhart's skill, experience, and background, a reasonable hourly rate for him in this case is $100 an hour.

James McGinnis claims $100 an hour but states that, because of the complexity of the action, the Court should adjust his base rate to that of $150 an hour. In his deposition, Mr. McGinnis stated that between 1980 and 1984 his hourly rate ranged from $50 to $100, with $75 being the rate most frequently charged. He received his law degree in 1977, and was admitted to practice in 1978. As of July 1, 1980, the approximate beginning of his time claimed in this matter, Mr. McGinnis had tried, to judgment, only one employment discrimination case, and had not prevailed in that matter. Nor did he successfully try a single employment discrimination case to judgment in the period from July 1, 1980 to December 31, 1984.

Given the 1981 prevailing rate noted in *Davis* in 1983, the normal inflation of the last two years, and Mr. McGinnis' relative inexperience, a reasonable fee for him is $75 per hour.

Gary Benjamin seeks $100 an hour for his time in the case. He recites in his affidavit that his normal hourly fee is $100 per hour.

This rate is not sustained by his testimony at deposition. He testified that in the case of *Rulo v. Chrysler* and several other cases his clients did not prevail. In *Richards v. IBM*, he was paid something in the range of $3,000 to $5,000 for work on appeal but did not know his hourly realization. In *Young v. Memorial Hospital*, the attorney fee worked out to less than $50 an hour. He also testified that he had taken some cases on a one-third contingency basis, where he had an hourly realization of $100 or more.

Like Mr. McGinnis, Mr. Benjamin was admitted to practice in 1978. Given the 1981 prevailing rate, the normal inflation of the past two years, and Mr. Benja-

min's level of experience, the Court determines $75 an hour is a reasonable hourly fee for Mr. Benjamin.

Samuel McCargo and Ronald Reosti have claimed attorney fees for their time spent representing plaintiffs' attorneys in the fee petition. An attorney is entitled to attorney fees under § 1988 for his or her time spent on the attorney fee petition. *Northcross, supra*. If that attorney hires another attorney to seek the fees on his or her behalf, § 1988 attorney fees are available for the time spent by that attorney.

There is no Sixth Circuit authority on the question, but several courts of appeal have held that an attorney representing the prevailing parties' attorney in a § 1988 fee petition is entitled to fees under the Act.

In *Shadis v. Beal*, 703 F.2d 71 (3d Cir. 1983), the attorney in the underlying civil rights case engaged a firm to represent her in her fee petition. The court refused to grant attorney fees to the firm for the time it spent preparing its own fee petition, reasoning that the connection between employment as counsel for the attorney of the prevailing party and the prosecution of a civil rights claim was too attenuated to bring the former within the policy of § 1988. However, the court held that, since the original attorney in the case was entitled to reasonable fees for preparing her own fee petition, the firm which represented her should be compensated in her stead.

In *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945 (1st Cir.1984), the court followed the lead of *Shadis*, and found that counsel handling the fee petition should be awarded fees, but only to the extent that he or she stood in the shoes of the original counsel. The court disallowed hours spent by fee petition counsel in familiarizing himself with the case, and hours spent in excessive conferences. The court noted that, since the defendants vigorously litigated the fee application, it was appropriate for original counsel to hire an attorney to represent them in the matter.

In *Jonas v. Stack,* 758 F.2d 567 (11th Cir.1985), the Eleventh Circuit followed *Shadis* and *Grendel's Den,* reasoning that such a result conforms with the policy considerations underlying § 1988:

The Act's primary function is to shift the costs of civil rights litigation from civil rights victims to civil rights violators. *Dowdell v. City of Apopka, Florida,* 698 F.2d 1181, 1189 (11th Cir.1983). Its legislative history articulates two justifications for the cost-shifting mechanism. First, the mechanism affords civil rights victims effective access to the courts by making it financially feasible for them to challenge civil rights violations. Second, it provides an incentive for both citizens and members of the bar to act as "private attorneys general" to ensure effective enforcement of the civil rights laws.

We have recognized that the Act's success in achieving its purposes depends on whether the cost-shifting mechanism reimburses costs and fees on a par with what the attorney would otherwise receive from fee-paying clients. (citation omitted). Were we to institute an absolute ban on recovery for expenses incurred by a lawyer who finds it necessary to hire counsel to prosecute his fee application, the profitability of handling civil rights cases would be reduced, since he would then have to absorb an expense not generally associated with other types of litigation.

*Id.* at 569.

The Court feels it should adopt the reasoning of the First, Third and Eleventh Circuits, and holds that McCargo and Reosti, counsel on the fee petitions before the Court, are entitled to reasonable attorney fees for time spent "standing in the shoes" of the fee petitioners.

■ Mr. Reosti claims that his rate of compensation should be $150 an hour. He was admitted to the Bar in 1960, and has been in private practice for 16 years, specializing in labor-related litigation, with emphasize on employment discrimination cases. He has authored articles for The Institute of Continuing Legal Education,

and has been a guest lecturer at the University of Michigan on the topic of employment discrimination. Given the 1981 prevailing rates, as described in *Davis* by Judge Cohn in 1983, and considering the normal inflation of the last two years, the Court finds a reasonable rate of compensation for Mr. Reosti is $125 an hour.

Mr. McCargo has suggested no rate of compensation to the Court. He was admitted to practice in 1975, has lectured on labor relations issues, and has served as an arbitrator as well as conducted a private practice. Given the 1981 prevailing rates described by Judge Cohn in *Davis* in 1983, and considering the normal inflation, a reasonable rate of compensation for Mr. McCargo would be $80 an hour.

Finally, the question of enhancement of fees must be considered.

■ *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) is the leading case on the subject of upward adjustments of attorney fee awards in § 1988 cases. *Blum* severely limits the power of the district court to make an upward adjustment in the attorney fee of any civil rights case. The *Blum* Court stated that normally a reasonable fee will be established by multiplying the time reasonably expended by the prevailing market rates in the relevant community, and an upward adjustment would be appropriate only in rare cases:

The novelty and complexity of the issues presumably were fully reflected in the number of billable hours recorded by counsel and thus do not warrant an upward adjustment in a fee based on the number of billable hours times reasonable hourly rates. There may be cases, of course, where the experience and special skill of the attorney will require the expenditure of fewer hours than counsel normally would be expected to spend on a particularly novel or complex issue. In those cases, the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates. Neither complexity nor novelty of the issues,

therefore, is an appropriate factor in determining whether to increase the basic fee award.

The "quality of representation," ... generally is reflected in the reasonable hourly rate. It, therefore, may justify an upward adjustment only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was "exceptional."

465 U.S. at 898–99, 104 S.Ct. at 1548–49.

In *Blum*, the Supreme Court left open the issue of whether an upward adjustment based on the risk of not prevailing, and thereby recovering no fees, is appropriate. Justices Brennan and Marshall separately concurred in *Blum* in order to express their opinions that fees should be enhanced for the risk of not prevailing. Justice Brennan pointed out:

I write separately only to reaffirm my view that Congress has clearly indicated that the risk of not prevailing, and therefore the risk of not recovering any attorney's fees, is a proper basis on which a district court may award an upward adjustment to an otherwise compensatory fee.

Although the Court leaves the question unresolved, ... the legislative history that always has controlled our interpretation of § 1988, and that proves determinative on the other issues addressed by today's decision, also determines whether an upward adjustment to compensate for the risk of nonpayment may be justified.

465 U.S. at 902, 104 S.Ct. at 1550.

It therefore appears that the question of upward adjustment, based on the risk of not prevailing and thereby recovering no fees, is an open question in the United States Supreme Court. The Sixth Circuit, however, has specifically ruled that the risk of not prevailing, and thus recovering no fees, is an appropriate basis for upward adjustment. In *Northcross, supra*, the court said:

This does not mean that the routine hourly rate charged by attorneys is the maximum which can or should be awarded. In many cases that rate is not "reasonable," because it does not take into account special circumstances, such as unusual time constraint, or an unusually unpopular cause, which affect the market value of the services rendered. Perhaps the most significant factor in these cases which at times renders the routine hourly fee unreasonably low is the fact that the award is contingent upon success.... If he or she will only be paid in the event of victory, those rates will be adjusted upward to compensate for the risk the attorney is accepting of not being paid at all.

*Id.* at 638.

And in *Louisville Black Police Officers, supra*, the court said this:

This court stated in *Northcross* that a significant factor which renders a routine hourly fee unusually low is the fact that the award is contingent upon success. We noted that the risk was greatest in cases involving developing areas of law or those in which the facts are strongly disputed.... Both elements were present in this case, thereby supporting "a substantial upward adjustment to compensate for the risk."

*Id.* at 280.

In *Craik v. Minnesota State University Board*, 738 F.2d 348 (8th Cir.1984), a post-*Blum* case, the court held that an enhancement of 25% for two of the plaintiffs' attorneys for the risks assumed in taking the case was justified. The Court said:

We know from *Blum* that the results obtained by plaintiffs are usually not a proper ground for enhancement. (citation omitted). On the other hand, *Blum* leaves open the possibility that the risks assumed by counsel in taking a case can be a ground for enhancement (citation omitted), and we believe that this ground is available here. In *Blum* no enhancement on account of risk was allowed, because the District Court, the court whose fee award was contested in that

case, had no basis in the record for finding that any particular risk had been assumed. Here, however, such a finding is compelled. Counsel for plaintiffs undertook this case, which they must have known would require a massive expenditure of time and energy, in the face of the very real possibility that no fee at all would be obtained. The risk here went beyond the normal contingent-fee situation. In Mr. Quiggle's case, for example, substantially all of his professional time between December 1982 and June 1983 was spent on this appeal. The investment of that much time out of one's law practice with no real hope of compensation if the appeal should prove unsuccessful is indeed a major risk, one that we think should be taken into account in setting a reasonable fee.

*Id.* at 350–51.

*See also Roberts v. National Bank of Detroit*, 556 F.Supp. 724 (E.D.Mich.1983).

This case was a difficult and complex class action that presented novel issues. Plaintiffs achieved excellent results. However, *Blum* prohibits fee enhancement on that basis alone. Attorneys Mirer, McGinnis, Benjamin, and Barnhart were competent and able in their presentation. Attorney Atkins was a superb advocate whose unusually high skills were largely responsible for the results in this case. His extensive experience and background in complex civil rights litigation gave him unusual skills, and he was the lawyer most responsible for bringing about a successful result in what very easily could have been a total disaster for the plaintiffs. Although Mr.

Atkins offered representation of an extremely high quality, the Court cannot find that the quality of services rendered was superior to that which one would reasonably expect in light of the $200 an hour rate it finds appropriate for Mr. Atkins.

However, the Court finds that the attorneys in this case faced a substantial risk of failure and non-payment. Notwithstanding that fact, counsel undertook the case and expended large amounts of time and energy in the face of a very real possibility that no fee would be obtained. This is an appropriate basis for upward adjustment, and the Court determines that an upward adjustment of 20% is appropriate in the rate for Mr. Atkins, Ms. Mirer, Mr. McGinnis and Mr. Benjamin. However, this upward adjustment is appropriate only for work that was substantially contingent in nature. Therefore, the upwardly adjusted rate will apply only to those hours worked prior to January 17, 1985, the date of the fee petition hearing. After that date, there was no substantial risk of non-recovery. Further, Mr. Barnhart's fee will not be adjusted upward since the minimal number of hours he spent on the case indicate that his risk of non-payment did not go "beyond the normal contingent-fee situation." Mr. Reosti and Mr. McCargo did not request enhancement, and none will be awarded since they faced no substantial risk of non-payment.

Based on these determinations, the hourly rate of reimbursement for each of the attorneys will be:

| | Base Rate | Upward Adjustment for Pre-January 17, 1985 Work | Enhanced Hourly Rate Awarded for Pre-January 17, 1985 Work |
|---|---|---|---|
| Mr. Atkins | $200 | 20% | $240 |
| Ms. Mirer | 90 | 20 | 108 |
| Mr. McGinnis | 75 | 20 | 90 |
| Mr. Benjamin | 75 | 20 | 90 |
| Mr. Barnhart | 100 | none | 100 |
| Mr. Reosti | 125 | none | 125 |
| Mr. McCargo | 80 | none | 80 |

## III

The next question the Court must consider is the number of hours to be attributed to each attorney for the work he or she performed.

Plaintiffs' counsel seek reimbursement for hours spent in trial preparation and in trial. They also seek fees for the hours spent post-trial in proceedings upon the fee petition. The Magistrate has made detailed recommendations as to allowable pretrial and trial hours, and as to fee petition hours up to the first fee petition hearing before this Court on January 17, 1985. The Magistrate made no recommendations as to fee petition hours claimed after January 17, 1985.

Under *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624 (6th Cir.1979), and its progeny, it is obvious that plaintiffs' attorneys are entitled to reasonable fees for the time spent on the fee petition.

The Court will first examine the hours claimed, and objected to, before January 17, 1985, upon which the Magistrate made findings and recommendations.

The first question before the Court is whether Jeanne Mirer is entitled to fees for 415.6 hours worked during the period from July 1980 to June 1982. During this time, she was a salaried lawyer with Wayne County Neighborhood Legal Services (WCNLS). Compensation for these hours is claimed by Ms. Mirer personally.

WCNLS has submitted no claim for fees. Ms. Mirer has filed an affidavit stating that WCNLS has assigned to her its rights to fees. Therefore, Ms. Mirer claims, she is entitled to fees for the time she worked for WCNLS.

■ The Magistrate's Report notes that, although no one raised the issue, the fact that Ms. Mirer was employed by a publicly funded agency would not preclude an award of attorney fees. The Magistrate cited *Leeds v. Watson,* 630 F.2d 674 (9th Cir.1980), which held that the fact plaintiff's counsel was a publicly funded legal services organization is irrelevant in determining the fee award. This determination of the Magistrate misses the point. It is true that the fact plaintiff's counsel is a publicly-funded legal organization is irrelevant in determining a fee award.[7] The question is not whether WCNLS could petition for fees. The question is whether Ms. Mirer can now receive fees for time spent while she was a full-time salaried employee of WCNLS. It is clear to the Court that this is a legal question subject to *de novo* review.

The City objects to the Magistrate's Report with reference to these fees under *Blum v. Stenson, supra. Blum* held that a reasonable fee is one that is adequate to attract competent counsel, but is not one that would produce a windfall for an attorney. The City argues, in essence, that for Ms. Mirer to receive § 1988 fees for the period of time when she was compensated by her WCNLS salary constitutes a windfall. Ms. Mirer responds that WCNLS was clearly entitled to fees for the time it was involved in the case and she was employed there. She argues that no case restricts WCNLS from assigning its rights to fees to an outside attorney when, because it is unable to handle the case itself, it needs to attract competent counsel to take over the case. Ms. Mirer's affidavit states that, when she left WCNLS, she entered into a contract with WCNLS in which she agreed to continue to represent plaintiffs. In return, WCNLS assigned to her its share of any fee resulting from the time expended by her while in its employ.[8] In essence, she argues that there is no windfall if she receives § 1988 fees for this time because

---

7. See *Dennis v. Chang,* 611 F.2d 1302 (9th Cir. 1980), *EEOC v. Enterprise Association Steamfitters,* 542 F.2d 579 (2nd Cir.1976) *cert. denied,* 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977); *Shadis v. Beal,* 692 F.2d 924 (3rd Cir. 1982); *Howard v. Phelps,* 443 F.Supp. 374 (E.D. La.1978).

8. It is significant that neither the assignment to Ms. Mirer nor the contract between Ms. Mirer and WCNLS was introduced into evidence before the Magistrate or before this Court.

the assignment of § 1988 fees is only what was necessary to attract competent counsel to the case which WCNLS could no longer handle.

There is no Sixth Circuit authority governing this problem, but in *Shadis v. Beal*, 692 F.2d 924 (3rd Cir.1982), the court faced a somewhat similar problem. There an attorney employed by the County Legal Services (CLS) when litigation began in 1978 subsequently resigned. CLS retained her on a consultant contract basis and paid her at an hourly rate. CLS further agreed it would not seek fees for the period post-1978. The attorney, in return, promised to reimburse CLS for the amount it paid her on the consulting contract if she won a fee award. CLS sought no fees for this attorney's work after 1978. The district court awarded her fees for the post-1978 period. The Third Circuit affirmed, making it clear that its affirmance depended upon the attorney reimbursing CLS, as called for by her contract.

In *Howard v. Phelps*, 443 F.Supp. 374 (E.D.La.1978), the court found that the ACLU should receive the fees generated by the attorney's services up to the date he was no longer employed by them, and the attorney should receive fees only for his services rendered after the time he left the ACLU. The court stated:

> However, it is plain that the organization that employed Mr. Kellogg, the American Civil Liberties Union should receive the fees generated by Mr. Kellogg's services up to the date he was no longer employed by them, Mr. Kellogg to receive fees only for services rendered since July 1, 1977 when he left the services of the ACLU.

*Id.* at 377.

A similar result was reached in *EEOC v. Enterprise Association Steamfitters*, 542 F.2d 579 (2nd Cir.1976). There the court said:

> As the union argues, and the First Circuit held in *Hoitt v. Vitek*, 495 F.2d 219, 220 (1st Cir.1974), undertaking a non-fee-paying case is the job of a public interest attorney who is salaried principally through federal funding. Certainly any fee recovery will accrue to the funded Project, since the individual public interest attorney will not increase his income as the result of the award of fees.

*Id.* at 593.

And in *Dennis v. Chang*, 611 F.2d 1302 (9th Cir.1980), the court made clear that the attorney fee award went to the legal services organization which represented the plaintiff in spite of the fact that the order seemed to award it directly to the plaintiffs.

It appears clear to the Court that WCNLS could have petitioned for fees for the time spent by Ms. Mirer in this case while she was employed on the WCNLS staff, and could have recovered them in reasonable amounts. But the fact remains that, for whatever reason, WCNLS has never petitioned for fees.

 Ms. Mirer has been fully compensated by salary for the time she spent as an employee of WCNLS. It would be against public policy to award her double compensation, and would provide a windfall for her. In addition, the Court has serious doubt of the right of a legal services organization to assign to a private attorney who leaves its staff the right to fees that belong to the organization. Although there may be no law forbidding a legal services organization from assigning its interest in an attorney fee award, certainly it is against public policy for it to assign a fee award to an attorney formerly in its employ. Such a practice would discourage support of such organizations by the general public.

For the reasons given, the 415.6 hours spent by Mrs. Mirer while working for WCNLS will be deducted from any fee award to her.

 The next question to be examined regarding claimed hours is whether fees should be awarded for a total of 106.8 hours spent on proceedings under Rule 37 of the Federal Rules of Civil Procedure. These proceedings arose out of fee claimants' delay in answering the City's March and April, 1982 interrogatories. Defend-

ants were forced to bring several motions to compel answers to interrogatories, resulting in three orders to compel, before answers were actually provided. In findings 137 to 168, the Magistrate finds as a matter of fact that these hours spent by plaintiffs' attorneys are not reasonably compensable. The findings of the Magistrate are not clearly erroneous. Therefore, the 106.8 hours spent on Rule 37 proceedings, will not be allowed. Of these hours, 5.4 were spent by Mr. Atkins, 48.3 by Ms. Mirer, 36 by Mr. McGinnis, 6 by Mr. Barnhart, and 9.1 by Mr. Benjamin.

The Court must also consider whether fees should be awarded for all of the time spent preparing the fee petition prior to January 17, 1985. Defendants object to the hours they claim were spent reconstructing time records. They also object to specific hours claimed by Ms. Mirer, such as 14 hours for entering and editing data from her private practice time slips into her computer, 5 hours of dictation and proof reading, 8 hours of legal research, 3 hours discussing strategy with clients, and 12.2 hours preparing affidavits drafting the brief and coordinating counsel. Mr. McGinnis claims 11 hours, and Mr. Benjamin claims 12 hours.

■ In findings 218–224, the Magistrate found that very little of the time above was spent on reconstruction of hours due to lack of contemporaneous records. He found that the 3 hours spent by Ms. Mirer discussing strategy with her clients was not reasonably compensable, and this finding is not clearly erroneous. He also found that all of the other fee petition hours were reasonably compensable, and these findings are not clearly erroneous. Therefore, the hours expended preparing the fee petition will be allowed as claimed, except 3 hours will be deducted from Ms. Mirer for time spent discussing strategy with her clients.

■ The next question to be considered is whether 111.5 hours spent by Mr. McGinnis when he was engaged as counsel in a separate class action, *Tyson v. City of Detroit*, from September 1, 1980 through Au-

gust 19, 1982 are compensable. The Magistrate found that the allegations in the *Tyson* case largely tracked the allegations in this case, with the exception that the *Tyson* plaintiffs claimed to have suffered hiring discrimination, and to have been entitled to retroactive seniority dates. Ultimately, the *Tyson* case was dismissed, without prejudice, on Mr. McGinnis' motion. In findings 27 through 48, the Magistrate found that when *Tyson* was voluntarily dismissed without prejudice, the issues and parties were merged into this case. The Magistrate further found that the *Tyson* case advanced the cause of the laid-off officers in this case, and that, therefore, there was no needless or unproductive effort spent in the *Tyson* case. The Magistrate recommended that Mr. McGinnis be allowed the claimed 111.5 hours for working on that case. The Court finds that the Magistrate's findings are not clearly erroneous on this point. Thus, no deduction will be made for time spent on *Tyson*.

■ Next, the Court must consider whether to allow fees for 53.6 hours spent by plaintiffs' attorneys in the pursuit of separate claims against the State of Michigan. These claims involved the approval of the 1978 binding arbitration award, setting the terms and conditions of employment of Detroit Police Officers. The claims were dismissed by the Court on February 17, 1982. The Magistrate found that the City could not challenge this time spent on State issues, given its continuing effort to obtain relief from the Court based on the asserted adverse impacts of the arbitrators' awards. The Magistrate recommended that the time spent on claims against the State be compensated, since at trial it was crucial for plaintiffs to understand the financial relationship between the DPOA and the City, and between the arbitration negotiations and the arbitration award. The Magistrate found that hours spent pursuing the claims against the state should not be excluded.

The Court finds that this determination is clearly erroneous. First, the Magistrate's finding that plaintiffs spent most of their time learning essential information

about the City and the DPOA is contradicted by his finding No. 128 that plaintiffs spent most of their time on the State claims fighting dismissal.

More importantly, the compensability of time spent pursuing claims against the city is a legal question under *Hensley, supra.* *Hensley* clearly requires that, when a plaintiff presents in one suit completely different claims with different facts and different theories, the separate claims are to be treated as separate lawsuits for fee purposes. Under *Hensley,* the plaintiffs were not prevailing parties against the State. The claims against the State were completely distinct from the other claims in this action. Thus, *Hensley* requires that the 53.6 hours spent pursuing the claims against the State be found not compensable. Of these hours, 35.2 were spent by Ms. Mirer, 15 by Mr. Atkins, and 3.4 by Mr. Benjamin.

Next, the Court must consider whether to reduce the compensable hours for failure to keep contemporaneous time records. Such reductions are approved in *Hensley.* Ms. Mirer claimed 415.6 hours based on reconstructed time records. These hours were the hours worked while she was employed by the WCNLS. Since the Court has already decided that she is not entitled to the hours worked at WCNLS, there is no longer any basis to reduce her hours for failure to keep contemporaneous records.

■ Mr. Benjamin claims 294.3 hours based on reconstructed rather than contemporaneous records. The Magistrate found that a review of Mr. Benjamin's reconstruction indicates a probable understatement of the time he spent on the case. The Magistrate stated, however, in his report:

Because of the lack of contemporaneous time records for some of the hours claimed, Mr. Benjamin has offered a compromise reduction of 30 hours, approximately 10% of those hours not supported by contemporaneous time record.... The Court may decide that under these circumstances his proposed compromise is an adequate reduction.

The Court feels that this is a reasonable reduction, and will therefore reduce by 30 the hours allowed Mr. Benjamin.

Next, the Court must consider a number of hours specifically objected to by the defendants.

■ The defendants identified a total of 22.4 hours spent on non-lawyer functions, such as xeroxing and holding press conferences. *Northcross, supra,* has suggested that such time can be compensated, but not at lawyer rates. Before the Magistrate, Mr. Benjamin agreed to withdraw his claim for these hours. The other attorneys agreed to reduce their claimed hours by roughly half of these challenged hours. The Magistrate found this to be reasonable. The Court agrees. Thus, the compensable hours will be reduced as follows: Mr. Benjamin's hours will be reduced by 3, Ms. Mirer's hours will be reduced by 7.5, Mr. Barnhart's hours will be reduced by 1.3, and Mr. McGinnis' hours will be reduced by 1.

Defendants also objected to 46.8 of Mr. Benjamin's and 45.8 of Mr. McGinnis' time as duplicative. The parties agreed to compromise 50% of these hours. Thus, Mr. Benjamin's hours will be reduced by 23.4, and Mr. McGinnis' hours will be reduced by 27.9.

Next, defendants identified 15 hours spent by Mr. Benjamin that they claim are not adequately described. Before the Magistrate, the parties agreed to reduce these claimed hours by one-half. This is reasonable, and the Court will thus reduce Mr. Benjamin's claimed hours by 7.5.

■ Finally, defendants have requested an across-the-board 10% reduction in compensable hours to account for the fact that there were several lawyers involved. The Magistrate's report found, except as noted above, all hours were adequately documented and reasonably compensable. In findings 106 and 107, the Magistrate compared the total hours and the fee request here (3,310 for five attorneys) with hours claimed in similar cases before the Eastern District of Michigan. He concluded that plaintiffs were able to try this case success-

fully to completion in much less time than it had taken other legal teams to try similar complex cases. The Magistrate went on to reject any finding that fee claimants duplicated each other's work. The Magistrate's finding is not clearly erroneous, and thus an across-the-board reduction of 10% for duplication is not warranted.

The Magistrate found that, other than the hours noted above, all of the hours claimed by petitioners up to the fee hearing on January 17, 1985 were adequately documented and reasonably compensable. This finding is not clearly erroneous, and is adopted by the Court.

Therefore, the compensable hours for each attorney up to the fee hearing on January 17, 1985 can be determined by taking the hours claimed by each attorney and subtracting the hours disallowed in the discussion above. Thus, compensable hours up to January 17, 1985 are:

| | Thomas Atkins | Jeanne Mirer | James McGinnis | Michael Barnhart | Gary Benjamin |
|---|---|---|---|---|---|
| Hours Claimed | 546.4 | 1471.6 | 697 | 46.9 | 548.7 |
| Hours Worked While Employed as WCNLS attorney | | 415.6 | | | |
| Reduction for noncontemporaneous records | | | | | 30.0 |
| Hours spendt in Rule 37 proceedings | 5.4 | 48.3 | 36 | 6 | 9.1 |
| Hours inadequately described | | | | | 7.5 |
| Hours identically stated by two attorneys | | | 27.9 | | 23.4 |
| Hours spent discussing strategy with clients re: fee petition | | 3.0 | | | |
| Hours spent in non-lawyer functions | | 7.5 | 1.0 | 1.3 | 3.0 |
| Hours spent pursuing state claims | 15.0 | 35.2 | | | 3.4 |
| Total allowable hours up to September 17, 1985 are: | 526 | 962 | 632.1 | 39.6 | 472.30 |

Between January 17, 1985 and September 11, 1985, the parties engaged in fee petition hearings before the Magistrate. On September 11, 1985 this Court held a hearing on the fee petition in which the parties argued their objections to the Magistrate's Report and Recommendation. Plaintiffs' attorneys Atkins, Mirer, Benjamin and McGinnis seek hours spent working on the fee petition during this period. In addition, their hired counsel, Mr. McCargo and Mr. Reosti, claim fees for their hours worked on the fee petition. These hours will be allowed as follows: Mr. Atkins, 120.75 hours; Ms. Mirer, 96.7 hours; Mr. McGinnis, 77.45 hours; Mr. Benjamin, 45.8 hours; Mr. Reosti, 151.55; and Mr. McCargo, 77.20 hours. These hours reflect all of the hours claimed, minus hours spent on the appeal. Defendants have raised no meritorious objections to these hours.

Thus, the total hours allowed for each attorney are:

| | Pre-January 17, 1985 Reasonable Hours | Hourly Rate Awarded (Enhanced where Applicable) | Fee Award Pre-January 17, 1985 |
|---|---|---|---|
| Mr. Atkins | 526.00 | $240 | $126,240.00 |
| Ms. Mirer | 962.00 | 108 | 103,896.00 |
| Mr. McGinnis | 632.10 | 90 | 56,889.00 |
| Mr. Barnhart | 39.60 | 100 | 3,960.00 |

| | Pre-January 17, 1985 Reasonable Hours | Hourly Rate Awarded (Enhanced where Applicable) | Fee Award Pre-January 17, 1985 |
|---|---|---|---|
| Mr. Benjamin | 472.30 | $90 | $42,507.00 |
| Mr. McCargo | 0.00 | 00 | 0.00 |
| Mr. Reosti | 0.00 | 00 | 0.00 |

| | Post-January 17, 1985 Reasonable Hours | Base Hourly Rate Awarded | Fee Award Post January |
|---|---|---|---|
| Mr. Atkins | 120.75 | $200.00 | $24,150.00 |
| Ms. Mirer | 96.70 | 90.00 | 8,703.00 |
| Mr. McGinnis | 77.45 | 75.00 | 5,808.75 |
| Mr. Barnhart | 0.0 | 0.00 | 0.00 |
| Mr. Benjamin | 45.80 | 75.00 | 3,435.00 |
| Mr. McCargo | 77.20 | 80.00 | 6,176.00 |
| Mr. Reosti | 151.55 | 125.00 | 18,943.75 |

The total fee award for each attorney for all hours prior to and after January 17, 1985 is as follows:

| | |
|---|---|
| Mr. Atkins | $150,390.00 |
| Ms. Mirer | 112,599.00 |
| Mr. McGinnis | 62,697.75 |
| Mr. Barnhart | 3,960.00 |
| Mr. Benjamin | 45,942.00 |
| Mr. McCargo | 6,176.00 |
| Mr. Reosti | 18,943.75 |

These amounts total $400,708.50. It is ordered that the City of Detroit pay one-half of this amount, and the DPOA pay one-half of this amount, for the reasons set forth in this opinion.

## IV

In addition to seeking attorney fees, plaintiffs seek costs. 42 U.S.C. § 1988 expressly states that attorney fees: "May be awarded as part of costs." *Northcross, supra,* has recognized that costs are reimbursable. *Northcross* points out that these costs include expenses normally billed to a client, such as photocopying, paralegal expenses, travel and telephone costs, and the like.[9]

### a. *Paralegals*

The first four cost items sought by plaintiffs are paralegal expenses for work performed by Linda Hice-Guastella, Melinda Lepere, Linda Fegins, and Pat Griffin.

The court in *Northcross* summarily indicated that fees for paralegals were recoverable. However, *Northcross* gives no guidance as to how to determine the appropriate amount to award. The question is complex, since the costs of paralegal services contain elements of both costs and attorney's fees. If viewed as attorney fees, the paralegal's time and rate should be scrutinized in the same manner as attorney time and rate. *Ramos v. Lamm,* 713 F.2d 546, 559 (10th Cir.1983). Presumably, under this method, the amount awarded by the Court to the law firm could exceed the amount the law firm paid to the paralegal. In essence, this is a windfall to the firm.

 The First Circuit in *Lamphere v. Brown University,* 610 F.2d 46 (1979), addressed this problem and held that the amount reimbursed must be limited to the amount actually paid. The Magistrate recommended that the Court adopt this approach as the better reasoned method for determining the allowable paralegal reim-

9. In *Buian v. Baughard,* 687 F.2d 859 (6th Cir. 1982), the court announced that the award of costs to a litigant was an absolute prerequisite to the award of attorneys fees under § 1988 for services resulting from the pursuit of appellate review. *Buian* was overruled by the Sixth Circuit sitting *en banc* in *Kelly et al. v. Metropolitan County Board of Education,* 773 F.2d 677 (6th Cir.1985.) There the Court said that an award of costs is separate and distinct from and totally unrelated to an award of attorney fees pursuant to § 1988.

bursement. The Court agrees. Thus, the amounts claimed as overhead for paralegals will not be allowed. Neither will flat "billing rates" for paralegal time be allowed. Only the amounts actually paid to the paralegals will be recoverable as costs.

■ Mr. Benjamin filed an affidavit swearing that Linda Hice-Guastella was paid as follows: $8.13 per hour times 248.5 hours, or $2020.30; $8.38 per hour times 2.5 hours, or $20.95, and $1.81 per hour in bonuses and insurance, for a total of $454.31. These three amounts will be allowed. Therefore, plaintiffs will be entitled to recover $2,495.56 for the costs of Linda Hice-Guastella as a paralegal.

With reference to Melinda Lepere, plaintiffs have provided an affidavit stating that she was paid $5.50 an hour for 396 hours (a total of $2,178); $4.50 an hour for 109 hours (a total of $490.50), and fringe benefits of $183.59. This totals $2,852.09. This amount will be allowed as costs.

■ Law student Pat Griffin was hired by WCNLS exclusively to work on this litigation under the direction of Jeanne Mirer. The Magistrate found that as a matter of fact all hours worked by Mr. Griffin were in aid of this litigation. Claimants seek reimbursement for the cost of Pat Griffin *on behalf of WCNLS*. Ms. Mirer's original affidavit states that she agreed to seek this reimbursement for WCNLS, and attached WCNLS's affidavit that it paid Pat Griffin $4.75 per hour for 844 hours, for a cost of $4,009.00. Unlike the situation regarding the claim for fees for Ms. Mirer for the period during which she was on salary at WCNLS, this reimbursement is to WCNLS and not to fee claimants. Therefore, $4,009.00 will be allowed costs, to be reimbursed by fee claimants to WCNLS.

The Court will not allow any costs for Linda Fegins. Her initial affidavit stated that she was an attorney licensed to practice law, and that her hourly rate for work on the case was $50 an hour. The Magistrate asked for a clarification of whether that amount was an amount billed by Mr. McGinnis for Ms. Fegins' time, or whether that was the amount paid to her. If the latter, the Magistrate recommended full reimbursement for the 29 hours claimed, and if the former, the Magistrate recommended evaluating her rate and time just as for the other attorneys in this case.

■ No affidavit clarifying Ms. Fegins' compensation was received after the Magistrate's request, and the record is clearly ambiguous as to whether she was paid as a paralegal or billed as an attorney. Because plaintiff's counsel failed to clarify this matter, the Court has no basis on which to award costs for Linda Fegins' time, and will deny any costs for her time.

Therefore, the Court will allow, as costs for paralegals, $2,495.56 for Linda Hice-Guastella, $2,852.09 for Melinda Lepere, and $4,009.00 to WCNLS in repayment of Pat Griffin's wages.

b. *Photocopying*

Next, the Magistrate found that Mr. McGinnis was entitled to be compensated for $477.82 for photocopying that he did for DPOA attorney Mr. Nussbaum. Mr. Nussbaum objects that he and Mr. McGinnis had a verbal agreement to set off his copying expense against some copying that the plaintiffs did at the DPOA office. The plaintiffs have not responded to this charge, and the Magistrate's finding must stand as not clearly erroneous. Therefore, $477.82 for photocopying will be awarded to Mr. McGinnis.

c. *NAACP Special Contribution Fund (SCF)*

Plaintiffs claim as costs $17,428.76 incurred by the NAACP–SCF. The Magistrate found that all items in the NAACP–SCF claim were reasonable and necessary, and hence compensable, except for $284 used by Ms. Mirer to attend the U.S. Supreme Court arguments on the Boston Firefighters' case, and an unspecified amount of double billing for paralegal costs for Ms. Melinda Lepere. The Court agrees that the $284 spent by Ms. Mirer to attend the U.S. Supreme Court arguments in the

Boston Firefighters case should not be allowed as costs, and will disallow them. In addition, the Court will disallow $500 for double billing for the paralegal costs of Melinda Lepere. Ms. Mirer's affidavit admits that there was inadvertent double billing, but no one identifies the amount involved, and the Court will therefore set the amount at $500.

The Court finds that, with reference to other claims, the Magistrate's determination is clearly erroneous. The City claims that the parties agreed to eliminate $418.51 in attorney expenses, $12.27 in hotel expenses, and $804.50 in air travel expenses. These agreements are documented in the transcript of the March 5, 1985 hearing before the Magistrate, pp 47–49. Therefore, these amounts will be deducted.

In addition, the City alleges that $134.80 and $113.50 were expenses and costs incurred in connection with the claim against the State. The City claims that the parties agreed to eliminate these expenses if fees were disallowed for time spent pursuing these claims. The Court has already ruled that attorney fees are not collectable for time spent pursuing the claim against the State. Neither will the Court allow costs, and these amounts will be deducted from the claim.

Finally, the City objects to the expert witness fee for Dr. Joe Darden, claiming that the Court did not credit him in the trial. In the underlying case, the Court said:

> It will disregard the testimony of Dr. Joe Darden, who was hired as an expert for the plaintiff, because his method of calculation was not identical to the method used by Fechter.

*NAACP v. DPOA, supra*, at 1198 n. 4.

The Magistrate determined that, notwithstanding the fact that the Court credited other expert testimony over that of Dr. Darden, that Dr. Darden's testimony was useful in this case, and the Magistrate found the expense to be reasonable, necessary, and compensable.

The Court finds this to be clearly erroneous and will disallow the $1,800 sought to reimburse Dr. Darden. The Court completely discredited his testimony, and his testimony was of no use to the Court in this case.

In summary, the Court will deduct the following figures from the $17,428.17 claimed as costs by the NAACP–SCF:

1. $284 for Ms. Mirer's attendance at the U.S. Supreme Court arguments in the Boston Firefighters case.
2. $500 for double billing for paralegal Melinda Lepere.
3. $418.51 for attorney expenses.
4. $12.27 for hotel expenses.
5. $804.50 for air travel expenses.
6. $134.80 and $113.50 for expenses incurred in connection with the claim against the State.
7. $1,800 expert witness fee for Dr. Darden.

The total deduction is $4,067.58. Therefore, plaintiffs are entitled to $13,360.59 for costs incurred by the NAACP Special Contribution Fund.

### d. *Expenses Incurred by the Detroit Chapter of the NAACP*

The Magistrate found that $596.25 in expenses incurred by the Detroit Chapter of the NAACP were adequately documented and reasonably compensable. The City objects that the parties, in hearing, agreed to reduce this amount by $127.52. However, the City has not documented this agreement in the record before the Magistrate. Therefore, the Court finds that the Magistrate's determination that the expenses incurred by the Detroit Chapter of the NAACP of $596.25 was not clearly erroneous, and therefore will allow this amount in costs.

### e. *Expenses Incurred by Guardians in the Amount of $1,850*

The Magistrate found expenses incurred by The Guardians in the amount of $1,850 to be reasonable, compensable, and adequately documented. There are no objections on the record, and the finding is not

clearly erroneous. Therefore, plaintiffs are entitled to costs in the amount of $1,850 for expenses incurred by the Guardians.

### f. *Expenses Incurred by Focus: HOPE in the Amount of $38,290.50*

 This claim involves the expert testimony of Dr. Sid Mittra. The Magistrate found this to be reasonably compensable, and found that the testimony aided the Court in its findings. The City objects that the testimony was unproductive at trial, and claims that no more than a $30 a day witness fee can be claimed for this witness. The City based its argument on language in *Northcross, supra,* implying that witness fees are allowed under 28 U.S.C. § 1920. The Court feels that the DPOA is wrong in its interpretation that *Northcross* limits expert witness fees to a statutory $30 a day. This argument was rejected by Judge Feikens of this Court in *Greenspan v. Automobile Club of Michigan,* 536 F.Supp. 411 (E.D.Mich.1982), where the court held that expert witness fees are, under *Northcross,* recoverable if they are reasonable and necessary. The Court agrees with Judge Feikens that such fees are recoverable, if they are reasonable and necessary.

This does not close the matter, however, for the Court holds that the Magistrate's finding that this testimony aided the Court is clearly erroneous.

Dr. Mittra testified to the economic damage to the community and the police officers that would come about if they were not reimbursed with a back pay award. Unfortunately, the Court does not feel that that testimony was of any help in determining the issue. The transcript of the testimony, pages 1711 through 1714, puts this testimony in perspective:

> The Court: Let me ask another question that is kind of bothering me here. Lets assume this Court eventually says that all laid-off officers are entitled to all back-pay, and entitled to be made whole, and I make that determination. How do these figures help me here.

What do I do? You have got 50, 81, some 86, 87 million. How does that help me? Where do I put the 81,000,000, 87,-000,000?

It seems to me, is this not an individual case, that if this Court should determine back pay was to be awarded, then what would have to happen, it would have to go to a referee or someone and take each individual case and make a determination.

The Witness: That would be the most accurate way to go.

> The Court: What would I do with your $87,000,000, if accepted your figures and said we're going to award back pay on all losses, and that comes up to your total of $87,000,000, and the City, after all appeals, and the City and the DPOA come up with the $87,000,000 and they bring it down and put it in the clerk's office, what do I do with it?

> The Witness: My—This is not an accurate statement that I can convey. But my guess would be since, since we had decided to completely ignore all of the out-of-pocket expenses, which in many instances are considerable, that there would be a significant amount of wash between the earned income that they had that they did not report, and the out-of-pocket expenses.

The Court: Lets assume that I've got the $87,000,000 sitting in the Clerk's Office, and 799 laid-off officers that are entitled to "X" percentage of that, or "X" share. How do I get that $87,000,000 to 799 officers in any fair way?

What I am saying, sir, is what you have done, is it at all helpful, or are we in a position that, if there is to be that remedy ordered, it has to be done on an individual basis, officer by officer under oath, looking at specifically what he lost, what his income was, and so forth in an individual one-by-one basis?

> The Witness: On any kind of a survey that is really not important do that. If you want to be absolutely certain that it is 100% correct—

· The Court (interposing) You haven't answered my question. Let's assume it is too much work to be 100% correct. Let's assume that $87,000,000 is the loss, which is what you have established. How would this Court get that in the hands of 799 people fairly? Assume the money is deposited in the Clerk's Office and now there are 799 people standing out there saying, I want my share of that $87,000,000. How do I get that fairly into the hands of the people?

The Witness: The only way you can be fair is simply now to ask each person to document exactly what their loss is.

The Court: Essentially, so we are right back where we started from, that that has to be done at the beginning, doesn't it?

That is the way you get it to any loss before taking the total. I am not trying to depreciate the work, but what use is the fact that you have calculated by your method $50,000,000 in wage loss and $31,000,000 in pension loss, and $5,000,000 in fringe benefit, but how can these figures be of any benefit to the Court, should the Court order the payment of back, of lost wages and fringe benefits when it has to be done on an individual basis, officer by officer?

The Witness: There are two separate issues here. One is to make an overall estimate, a ball park figure of the loss. Another thing is how that lost money is to be distributed.

The Court: You have made the ball park estimate of the loss, $87,000,000.

The Witness: Okay.

The Court: Go ahead. My question is—I guess, I don't want to seem rude. I will ask the question. I will be very coarse in doing it. My question, I guess, is so what?

It therefore appears clear to the Court that the expenses incurred in preparing for Dr. Mittra's testimony and in presenting that testimony were of no benefit to the Court. The fact that $81,000,000 had been lost meant nothing if the Court were to order back pay and fringe benefits. As the Court pointed out in its colloquy with Dr. Mittra, it would then have to allocate that award on an officer-by-officer basis, and the fact that there was $81,000,000 or any other total sum was totally irrelevant.

Therefore, the Court finds the determination of the Magistrate that the testimony aided the Court in its findings to be clearly erroneous, and will deny the claim for expenses incurred by Focus: HOPE in the amount of $35,290.58.

g. *Expenses Incurred by Schrauger & Dunn*

The Magistrate recommended payment of $1,363.59 in expenses incurred by Schrauger & Dunn, with the exception of $500 of this expense, which apparently went to Focus: HOPE. No one has responded to this finding of the Magistrate. The Court does not find it to be clearly erroneous, and thus the cost to be paid to Schrauger & Dunn is $1,363.59 less $500, or $863.59.

h. *Expenses on the Fee Petition*

Finally, fee petitioners claim the following expenses on the fee petition: Samuel McCargo, $22.00; Ronald Reosti, $402.48; and Thomas Atkins, $1,633.60. No objections have been made to these sums, and the Court finds they are reasonable and compensable as costs.

Thus, the following costs will be awarded:

| | |
|---|---|
| Paralegal cost of Linda Hice-Guastella | $ 2,495.56 |
| Paralegal cost of Melinda Lepere | 2,852.09 |
| Paralegal cost of Pat Griffin | 4,009.00 |
| Photocopying by Mr. McGinnis | 477.82 |
| NAACP Special Contribution Fund expenses | 13,360.59 |
| NAACP Detroit Chapter expenses | 596.25 |
| Guardians expenses | 1,850.00 |
| Schrauger & Dunn expenses | 863.59 |
| Samuel McCargo's expenses on the fee petition | 22.00 |
| Ronald Reosti's expenses on the fee petition | 402.48 |

Thomas Atkins' expenses on the fee
petition $ 1,633.60
 Total Costs $28,562.98

These costs will be shared equally between the City and the DPOA.

## V

In sum, the Court awards $400,708.50 in attorney fees. This is the sum of the reasonable fees for Mr. Atkins ($150,390.00), Ms. Mirer ($112,599.00), Mr. McGinnis ($62,697.75). Mr. Barnhart ($3,960.00), Mr. Benjamin ($45,942.00), Mr. McCargo ($6,176.00), and Mr. Reosti ($18,943.75).

The Court further awards $28,562.98 as reasonable costs.

Payment of fees and costs is to be shared equally by the City of Detroit and the Detroit Police Officers Association.