Barbara Jean **BERRY**, et al., Plaintiffs,

v.

**SCHOOL DISTRICT OF the CITY OF BENTON HARBOR, et al.,**
**Defendants.**

**Civ. A. No. 9.**

United States District Court,
W.D. Michigan,
Southern Division.

July 24, 1986.

John D. Tully, Warner, Norcross & Judd, Grand Rapids, Mich., Stephen C. Small, Small & Small, Benton Harbor, Mich., for Benton Harbor.

E. Michael Stafford, Farhat, Burns & Story, P.C., Lansing, Mich., for Coloma Bd. of Educ.

Francis A. Jones, III, John L. Crow, Hartwig, Crow, Jones & Postelli, St. Joseph, Mich., for Eau Claire Bd. of Educ.

James E. Riley, Asst. Atty. Gen., Lansing, Mich., for State of Mich.

Lee Boothby, Boothby, Huff & Yingst, Berrien Springs, Mich., for intervening defendants Fulner, et al.

Thomas Atkins, Teresa Demchak, General Counsel, NAACP Sp. Contribution Fund, Brooklyn Heights, N.Y., Duane Elston, NAACP Sp. Contribution Fund, Detroit, Mich., Dean Michael J. Stolee, Fox Pointe, Wis. (court appointed), for plaintiffs.

Thomas J. Nordberg, Thrun, Maatsch & Nordberg, P.C., Lansing, Mich., for Berrien Co. Inter. School Dist.

Arthur Przybylowicz, Foster, Swift, Collins & Coey, Lansing, Mich., for MEA.

## OPINION GRANTING ATTORNEYS' FEES AND COSTS

HILLMAN, Chief Judge.

This case is currently pending before the court on the petition of plaintiffs' counsel for an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988. On November 9, 1984, plaintiffs' counsel first petitioned this court for an award of attorneys' fees and costs. After several preliminary meetings between the parties, this court presided over a meeting of plaintiffs' and defendants' attorneys on September 6, 1985. At that meeting, all counsel agreed that an award of attorneys' fees should be accomplished without further litigation and on the basis of counsel's filed affidavits and legal briefs. *See Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). The following opinion presents this court's findings of fact and conclusions of law after careful review of the record and evaluation of counsel's submitted affidavits and briefs.

### FACTUAL and PROCEDURAL BACKGROUND

Plaintiffs, black public school students and their parents, originally filed this lawsuit in 1967 against the School District of the City of Benton Harbor, Michigan alleging *de jure* segregation in the Benton Harbor Area School District ("BHASD").[1] Defendants are now the BHASD; the Michigan State Board of Education and other State officials ("State defendants"); the Berrien County Intermediate School District ("BCISD"); Coloma Community Schools; and Eau Claire Public Schools. This court and United States District Judge Noel P. Fox found defendants liable for *de jure* race discrimination in the BHASD. Subsequently, this court, on May 1, 1981, entered a desegregation plan to remedy the constitutional violations by defendants. Through the joint efforts of *all* parties in this litigation, that plan has slowly but steadily been accepted and successful.

Over the past 19 years, "[t]his case has presented in one form or another almost all the issues which are possible in a school desegregation case." *Berry v. School District of the City of Benton Harbor*, 698 F.2d 813, 814 (6th Cir.1983). No need exists at this time to recount the struggles and events involved in this case. The following published opinions present adequate and detailed histories of this litigation: *Berry v. School District of the City of Benton Harbor*, 698 F.2d 813 (6th Cir. 1983), 505 F.2d 238 (6th Cir.1974), 564 F.Supp. 617 (W.D.Mi.1983), 515 F.Supp. 344 (W.D.Mi.1981), 494 F.Supp. 118 (W.D.Mi. 1980), 467 F.Supp. 630 (W.D.Mi.1978), 442 F.Supp. 1280 (W.D.Mi.1977).

As with other aspects of this case, in regards to the recovery of attorneys' fees individuals are not in two easily distinguishable groups. The several attorneys who represented plaintiffs during the long course of this case are divided into three groups. First, Paul R. Dimond represents attorneys Louis R. Lucas, Stuart J. Dunnings, Jr., Elijah Noel, Jr., and Teresa Demchak.[2] Second, Thomas I. Atkins represents himself and the Honorable Nathaniel R. Jones, a Judge on the United States

---

1. Although the pleadings named the School District of the City of Benton Harbor as a defendant, the original defendant was the BHASD. *See Berry*, 442 F.Supp. at 1296 n. 15.

2. Mr. Lucas originally represented this first group of plaintiffs' counsel. On October 28, 1985, Mr. Lucas withdrew from this case and Mr. Dimond assumed his representation of this first group of plaintiffs' attorneys.

Court of Appeals for the Sixth Circuit.[3] Third, Grover G. Hankins, on behalf of the National Association for the Advancement of Colored People—Special Contribution Fund ("NAACP—SCF"), represents three attorneys for their legal representation of plaintiffs while employees of the NAACP—SCF: Michael H. Sussman, Thomas I. Atkins (for the period from May 1, 1980 until July 1, 1984), and Teresa Demchak (for the period from October, 1980 until November 15, 1982). Defendants have not joined together in opposition to this petition for attorneys' fees and costs. Instead, defendants have individually filed briefs with regard to the proper amount of an award and the proper apportionment of such award among the defendants.

## DISCUSSION

This petition for attorneys' fees and costs requires this court to answer three general questions. First, are the plaintiffs a "prevailing party" within the meaning of 42 U.S.C. § 1988? Second, what is the proper amount of attorneys' fees and costs to be awarded in this case? Third, how should an award of attorneys' fees and costs be apportioned among the defendants?

### A. *Attorney Fee Awards in Civil Rights Actions.*

Until recently federal courts used their general equity power in awarding attorney fees to prevailing parties in civil rights actions. In *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court "reaffirmed the 'American Rule' that each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary." *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983). Therefore, a federal court can only, with a few exceptions, grant attorney fees to a party when a statute au-

thorizes such an award. In response to *Alyeska Pipeline*, Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. Plaintiffs' counsel seek an award of attorneys' fees and costs under section 1988.

Section 1988 allows prevailing parties in civil rights litigation to recover their attorneys' fees. Specifically, section 1988 in pertinent part provides that:

"In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

Litigation surrounding section 1988 centers around two issues: (1) whether plaintiff was a "prevailing party" and (2) what are "reasonable attorney's fees."

A plaintiff is a prevailing party under section 1988 " 'if [he] succeed[ed] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing the suit.' " *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1393 (quoting *Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir.1978)). Several recent opinions from the Supreme Court and the Court of Appeals for the Sixth Circuit have answered many questions concerning how a court should determine what are reasonable attorney's fees under section 1988. In *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624, 642 (6th Cir.1979), the court of appeals applied an "analytical approach" in determining reasonable attorney's fees. In short, *Northcross* "advises that the attorney's normal hourly billing rate should be a key focal point in award determinations." *Kelley v. Metropolitan County Board of Education,* 773 F.2d 677, 683 (6th Cir.1985) (*en banc*). In making a determination of the reasonableness of attorney's fees, the an-

---

**3.** Generally, a federal district judge should not pass upon an attorney fee petition by a judge within the same judicial circuit. *See Brinkman v. Gilligan,* 557 F.Supp. 610, 614 n. 9 (S.D.Ohio 1982). Nonetheless, given defendants' failure to object, the relatively small amount of hours expended on this case by Judge Jones, and the need to avoid further delay in making this fee award, I find that Judge Jones' petition may properly be considered by this court.

alytical approach of *Northcross* includes two steps.

First, a court arrives at the standard or "lodestar" amount of attorney's fees, i.e., the product of a reasonable hourly rate and the hours of service. "[A] fee calculated in terms of hours of service provided is the fairest and most manageable approach." *Northcross*, 611 F.2d at 636. *See also Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. Therefore, a court should use the product of an attorney's total hours and a reasonable hourly rate as the starting point in awarding attorney fees. In evaluating an attorney's hourly rate, a court should consider the "prevailing market rates in the relevant community," *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), and the "attorney's normal hourly billing rate." *Kelley*, 773 F.2d at 683. In determining the amount of hours of service, a court should first look to the attorney's affidavit. A court should then adjust the hours of service to account for any duplication of other attorneys' services, frivolous claims, and padding. Only in reducing the amount of hours for duplicative services may a court reduce without specification a percentage of the documented total hours. In all other cases, a court should articulate its reasons for eliminating specific hours of service. *See Northcross*, 611 F.2d at 636–37.

■ Second, a court considers whether special circumstances require it to increase or decrease the lodestar award. In some cases the lodestar amount is not a reasonable attorney's fee. In such cases "that rate is not 'reasonable', because it does not take into account special circumstances, such as unusual time constraint, or an unusually unpopular cause, which affect the market value of the services rendered. Perhaps the most significant factor in these cases which at times renders the routine hourly fee unreasonably low is the fact that the award is contingent upon suc-

cess." *Northcross*, 611 F.2d at 638. The final factor mentioned in *Northcross*, the "contingency factor," is the chief means that plaintiffs' attorneys have of collecting an award beyond the lodestar amount and the most controversial. *See Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Laffey v. Northwest Airlines*, 746 F.2d 4 (D.C.Cir.1984). The contingency factor seeks to compensate plaintiffs' counsel for "the risk of not prevailing and thereby recovering no fees." *NAACP, Detroit Branch v. Detroit Police*, 620 F.Supp. 1173, 1187 (E.D.Mi.1985). As the court of appeals emphasized in *Northcross*, 611 F.2d at 638, "[t]he contingency factor is not a 'bonus' but is part of the reasonable compensation to which a prevailing party's attorney is entitled under § 1988."

In light of these general principles, I shall now consider the petition for an award of fees and costs by plaintiffs' counsel in this case.

B. *Application of 42 U.S.C. § 1988.*[4]

■ (1) *A "Prevailing Party"*—Defendants do not dispute that plaintiffs are a "prevailing party" within the meaning of section 1988. Plaintiffs showed that defendants violated the equal protection clause of the Fourteenth Amendment to the Constitution. The court enjoined defendants from further acts that would perpetuate racial segregation and ordered them to assist in the formulation of a remedy that would eradicate all vestiges of racial segregation in the BHASD. In addition, the court ordered that the Eamon residential area be returned to the BHASD and enjoined the transfer of the Sodus II area from the BHASD to the Eau Claire School District. *See generally Berry*, 698 F.2d at 816–17; 467 F.Supp. at 690–95. Finally, the court issued a broad desegregation plan to remedy defendants' constitutional violations. *Berry*, 515 F.Supp. 344.

---

**4.** In their memorandum supporting their petition for attorneys' fees, plaintiffs' counsel also refer to 20 U.S.C. § 1617 as a statutory basis for their petition. In 1978, Congress repealed that statutory provision. No question exists, however, that 42 U.S.C. § 1988 applies to this case even though enacted in 1976. *See Northcross*, 611 F.2d at 633–34 (finding that section 1988 applies to all cases "pending" at the time of the enactment of the statute); *Gaines v. Dougherty County Board of Education*, 775 F.2d 1565, 1570 n. 11 (11th Cir.1985).

Although plaintiffs failed to achieve a consolidation of the three principal school districts, plaintiffs have prevailed within the meaning of 42 U.S.C. § 1988. The BHASD is desegregated. *See Northcross,* 611 F.2d at 636.

(2) *A Reasonable Amount of Attorneys' Fees*—As explained previously in this opinion, a reasonable amount of attorneys' fees is generally the lodestar amount, which is the product of total hours of service and a reasonable hourly billing rate.

(i) Lodestar Amount

■ Plaintiffs' counsel have filed affidavits listing the hours they worked on this lawsuit. The affidavits present detailed information concerning the amount of time devoted to particular tasks and the total hours expended prosecuting plaintiffs' claims and pursuing an award of fees and costs.[5] In total plaintiffs' counsel expended the following hours: Louis R. Lucas—1013.8 hours; Stuart J. Dunnings, Jr.—782 hours; Elijah Noel, Jr.—458.5 hours; Teresa Demchak—616.05 hours; Thomas I. Atkins—1,777.83 hours; the Honorable Nathaniel R. Jones—76.1 hours; and Michael H. Sussman—355.7 hours. I find these hours adequately documented and reasonable in amount. This case was highly complicated and lengthy. In fact, defendants do not dispute the legitimacy of any specific hours claimed by plaintiffs' counsel. Instead, defendants assert that this court should reduce the total hours claimed to reflect duplication of services by plaintiffs' several attorneys.

I find that a reduction in the claimed hours to account for duplication of legal services is inappropriate under the circumstances of this case. First, on the basis of careful review of the submitted affidavits, I find that plaintiffs' counsel have already removed most hours of duplicative services. Second, based on my experience in presiding over this litigation, I find that the total hours submitted are likely far less than actually expended by plaintiffs' counsel. This case involved many complex issues and a great amount of investigative work which surely consumed the hours claimed. Third, at least one attorney who represented plaintiffs has not sought an award of fees for his legal services. Finally, the lack of duplication by plaintiffs' counsel is demonstrated by a comparison of the hours expended by plaintiffs' and defendants' counsel. Plaintiffs' counsel claim a total of 5,079.98 hours. While defense counsel, without inclusion of the hours expended by counsel for the State defendants, expended over 10,500 hours.

Therefore, the total compensable hours for each attorney are:

| ATTORNEYS | TOTAL COMPENSABLE HOURS |
|---|---|
| Louis R. Lucas | 1013.80 |
| Stuart J. Dunnings, Jr. | 782.00 |
| Elijah Noel, Jr. | 458.50 |
| Teresa Demchak | 616.05 |
| Thomas I. Atkins | 1777.83 |
| Nathaniel R. Jones | 76.10 |
| Michael H. Sussman | 355.70 |

■ The proper hourly billing rate is the fair market rate in the relevant community. *See Louisville Black Police Officers Organization v. City of Louisville,* 700 F.2d 268, 277 (6th Cir.1983). In determining the fair market rate "an important indicator ... is the hourly rate [normally] charged by the attorney." *NAACP, Detroit Branch,* 620 F.Supp. at 1183. An attorney's training, experience, and expertise should be reflected in that hourly rate. Especially in cases involving particularly

---

5. I note that only attorneys Lucas, Demchak, Atkins, and Sussman have included hours expended in pursuit of their fees and costs. "An attorney is entitled to attorney fees under § 1988 for his or her time spent on the attorney fee petition." *NAACP, Detroit Branch,* 620 F.Supp. at 1185.

complex issues, "the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates." *Blum*, 465 U.S. at 898, 104 S.Ct. at 1548. Furthermore, a court may look beyond the local geographic market in considering the fair market value of an attorneys' services. A national market or a market for a particular legal specialization may provide the appropriate market. *See Louisville Black Police Officers Organization*, 700 F.2d at 278; *NAACP, Detroit Branch*, 620 F.Supp. at 1184.

In this case, four of the counsel are (or were) among the best, if not the best, civil rights attorneys in the nation. Mr. Lucas, Mr. Dunnings, Judge Jones, and Mr. Atkins have extensive experience in civil rights litigation generally and school desegregation litigation particularly. Over the past 20 years, Mr. Atkins and Mr. Lucas have served as lead trial and appellate counsel in much of the major school desegregation litigation across the nation. In his capacity as General Counsel of the NAACP and the NAACP—SCF from October 1, 1969 through October 12, 1979, Judge Jones supervised nearly all the major school desegregation litigation in the country during that period. Mr. Dunnings has been a prominant civil rights and plaintiffs' attorney in Lansing, Michigan since 1950. Over those 36 years, Mr. Dunnings has served in leadership roles in local, state, and national bar associations. In brief, these four attorneys are excellent, experienced attorneys without close parallel in school desegregation and civil rights litigation. Mr. Lucas and Mr. Dunnings assert that their normal hourly billing rate is $175.00. Mr. Atkins and Judge Jones seek an hourly billing rate of $200.00.[6] Given the complexity and unpopularity of this litigation, the attorneys' normal hourly billing rates, and the attorneys' national experience in school desegregation litigation, I find that $150.00 is a reasonable hourly rate for Mr. Lucas, Mr.

Dunnings, Mr. Atkins, and Judge Jones. *See NAACP, Detroit Branch*, 620 F.Supp. at 1184.

Mr. Sussman seeks a hourly rate of $125.00. For the following reasons, I find that $125.00 is a reasonable rate for Mr. Sussman's legal services. Mr. Sussman is a 1978 graduate of Harvard Law School. Since his graduation, Mr. Sussman has specialized in civil rights and school desegregation litigation. From 1978 until 1981 he served as a trial attorney in the Civil Rights Division of the Department of Justice. Since June 1981 Mr. Sussman has been Assistant General Counsel of the NAACP—SCF. In that capacity, Mr. Sussman has represented plaintiffs as lead counsel in this lawsuit over the past several years. Mr. Sussman has represented plaintiffs with vigor and excellence. Mr. Sussman claims that his normal hourly billing rate in school desegregation case is $125.00. I find such an hourly fee reasonable for an attorney with the expertise and skill of Mr. Sussman.

Finally, Mr. Noel seeks an hourly rate of $100.00 and Ms. Demchak seeks an hourly rate of $110.00. Mr. Noel and Ms. Demchak served as assistants to lead counsel during various stages of this litigation. Mr. Noel worked on this case from 1974 to 1977. Ms. Demchak was involved in this case from 1977 to 1981. At the time of their involvement in this litigation Mr. Noel and Ms. Demchak were newly licensed attorneys with relatively little trial experience. Mr. Noel became licensed to practice law in September, 1972. Ms. Demchak obtained her law license in November, 1976. Given their relative inexperience during their participation in this case and their supporting roles, I find that an hourly rate of $75.00 is reasonable for the legal services of Mr. Noel and Ms. Demchak.

Therefore, the reasonable hourly rate for each attorney is:[7]

---

6. Judge Jones does not explicitly state the hourly rate that he seeks. Nonetheless, his affidavit, filed along with the affidavit of Mr. Atkins which explicitly seeks an hourly rate of $200.00, specifies that "[t]he hourly rate set forth is a

reasonable amount charged by counsel with comparable experience and responsibility."

7. All hourly rates applied in this case are set according to reasonable hourly rates for 1986 rather than reasonable hourly rates at the time of service. Such an approach, as the parties

| ATTORNEYS | REASONABLE HOURLY RATE |
|---|---|
| Louis R. Lucas | $150.00 |
| Stuart J. Dunnings, Jr. | $150.00 |
| Elijah Noel, Jr. | $ 75.00 |
| Teresa Demchak | $ 75.00 |
| Thomas I. Atkins | $150.00 |
| Nathaniel R. Jones | $150.00 |
| Michael H. Sussman | $125.00 |

Consequently, the lodestar amount in this case for each attorney is:

| ATTORNEYS | TOTAL HOURS | HOURLY RATE | PRODUCT OF HOURLY RATE AND TOTAL HOURS |
|---|---|---|---|
| Lucas | 1013.80 | $150.00 | $152,070.00 |
| Dunnings | 782.00 | $150.00 | $117,300.00 |
| Noel | 458.50 | $ 75.00 | $ 34,387.50 |
| Demchak | 616.05 | $ 75.00 | $ 46,203.75 |
| Atkins | 1777.83 | $150.00 | $266,674.50 |
| Jones | 76.10 | $150.00 | $ 11,415.00 |
| Sussman | 355.70 | $125.00 | $ 44,462.50 |

(ii) Upward Adjustment of the Lodestar Amount

▇ Under special circumstances an award of attorney's fees equal to the lodestar amount is unreasonable. An upward adjustment of the lodestar amount may be required to arrive at a reasonable fee. As explained by the Court of Appeals for the Sixth Circuit,

"Perhaps the most significant factor in these cases which at times renders the routine hourly fee unreasonably low is the fact that the award is contingent upon success. An attorney's regular hourly billing is based upon an expectation of payment, win, loss or draw. If he or she will only be paid in the event of victory, those rates will be adjusted upward to compensate for the risk the attorney is accepting of not being paid at all."

*Northcross*, 611 F.2d at 638. This risk of non-payment is especially greatest in developing areas of the law or in cases involving strongly disputed facts. *Id.*

Plaintiffs' counsel seek an upward adjustment of 100 percent. Defendants differ in their views of the appropriateness of an upward adjustment or contingency factor. Defendant BHASD believes that an upward adjustment of 25 percent would be appropriate.[8] The remaining defendants maintain that no upward adjustment of the lodestar amount is appropriate. After carefully reviewing the long history of this case and contemporaneous legal developments, I find that an upward adjustment or contingency factor of 10 percent for a portion of the time expended is appropriate.

This litigation involved a hotly disputed set of facts concerning defendants' intent to discriminate. First, plaintiffs struggled to establish a prima facie case of *de jure* racial segregation. *See Barry*, 505 F.2d 238. Second, plaintiffs and defendants strongly contested the factual circumstances surrounding defendants' intentions with respect to defendants' rebuttal of plaintiffs' prima facie case. *See Berry*, 442 F.Supp. 1280, 467 F.Supp. 630. This case also concerned legal issues then only developing. During the pendency of this litigation, the Supreme Court limited multidis-

agree, obviates the need to consider inflationary effects and delayed payment. *See Gaines v. Dougherty County Board of Education*, 775 F.2d 1565, 1572 n. 14 (11th Cir.1985).

8. Defendant BHASD, however, also suggested significantly lower hourly rates than ultimately adopted by this court.

trict school desegregation remedies. *See Milliken v. Bradley*, 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974). Nonetheless, plaintiffs established multi-district violations of the equal protection clause and obtained a multi-district remedy. In short, the uncertainty of the law and the strong factual disputes involved in this case posed a great risk to plaintiffs' counsel that they would not prevail and, consequently, would not receive any fees.

"[I]n a long and complicated lawsuit such as this one, [however,] only a portion of the time expended can be reasonably regarded as contingent; once liability is established the attorney is assured of compensation for establishing the appropriate remedy, monitoring, the decree, and recovering his fee." *Northcross*, 611 F.2d at 638. Here, after this court's opinion of June 19, 1980, denying defendants' motion for a new trial, the question of defendants' liability was largely replaced by the question of an appropriate remedy. *See Berry*, 494 F.Supp. 118. Although some defendants continued to appeal the findings of liability, the issue of liability was not in such doubt that plaintiffs' counsel merit a contingency factor for services beyond June, 1980. *See Berry*, 698 F.2d at 816–17. Therefore, only those hours expended by plaintiffs' counsel before June 19, 1980 shall be given an upward adjustment to reflect the contingency factor.

Finally, I find that a 10 percent contingency adjustment is a reasonable level of upward adjustment. A 10 percent adjustment is commensurate with contingency adjustments made in other school desegregation cases. *See, e.g., Northcross*, 611 F.2d at 641. After plaintiffs established a prima facie case, the burden was on defendants to negate the prima facie case of *de jure* race discrimination. The burden upon defendants lessened the risk that plaintiffs would not prevail and plaintiffs' counsel would not receive their fees. *See Louisville Black Police Officers Organization*, 700 F.2d at 281. In addition, "[t]he contingency element ... is somewhat reduced ... by the admittedly small but assured financial support received from" the NAACP–SCF. *Northcross*, 611 F.2d at 641.

(iii) Combination of Lodestar Amount and Upward Adjustment

Therefore, a reasonable award of fees for each attorney in this case is computed first by increasing by 10 percent the lodestar amount for all legal services rendered before June 19, 1980; and second, by adding to that figure the unadjusted lodestar amount for services rendered after June 19, 1980. In terms of the following chart, the reasonable amount of fees for each attorney is the sum of column 4 and column 7, which is shown in column 8.[9]

| Column | (1) Hours expended Before 6/19/80 | (2) Hourly Rate | (3) Pre–6/19/80 Lodestar Amt. | (4) Upward Adj. of 10% to Pre–6/19/80 Lodestar |
|---|---|---|---|---|
| Lucas | 840.25 | $150.00 | $126,037.50 | $138,641.25 |
| Dunnings | 782.00 | $150.00 | $117,300.00 | $129,030.00 |
| Noel | 458.50 | $ 75.00 | $ 34,387.50 | $ 37,826.25 |
| Demchak | 427.80 | $ 75.00 | $ 32,085.00 | $ 35,293.50 |
| Atkins | 1665.25 | $150.00 | $249,787.50 | $274,766.25 |
| Jones | 76.10 | $150.00 | $ 11,415.00 | $ 12,556.50 |
| Sussman | 0.00 | $125.00 | $ 0.00 | $ 0.00 |

**9.** I note that all of Mr. Sussman's fees should be paid to the NAACP—SCF. Additionally, $12,-832.50 of Mr. Atkins' fee and $2,748.75 of Ms. Demchak's fee properly belong to the NAACP—SCF for work done while employed by the NAACP—SCF. That portion of Mr. Atkins' fee for services rendered between May 1, 1980 and July 1, 1984 belongs to the NAACP—SCF. Ms. Demchak's fee for services rendered between October, 1980 and November 15, 1982 belongs to the NAACP—SCF. The following chart shows the computation process I used in determining the amount of Mr. Atkins' and Ms. Demchak's fees that belong to the NAACP—SCF.

| Column | (5) Hours expended After 6/19/80 | (6) Hourly Rate | (7) Post-6/19/80 Lodestar Amt. | (8) Amount of Attorney's Fees Award |
|---|---|---|---|---|
| Lucas | 173.55 | $150.00 | $26,032.50 | $164,673.75 |
| Dunnings | 0.00 | $150.00 | $ 0.00 | $129,030.00 |
| Noel | 0.00 | $ 75.00 | $ 0.00 | $ 37,826.25 |
| Demchak | 188.25 | $ 75.00 | $14,118.75 | $ 49,412.25 |
| Atkins | 112.58 | $150.00 | $16,887.00 | $291,653.25 |
| Jones | 0.00 | $150.00 | $ 0.00 | $ 12,556.50 |
| Sussman | 355.70 | $125.00 | $44,462.50 | $ 44,462.50 |

### C. Costs and Expenses

■ Plaintiffs' counsel seek to recover their costs and expenses incurred in representing plaintiffs, pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1920. The NAACP—SCF petitions to recover $43,758.69 in expenses and costs. Specifically, under 42 U.S.C. § 1988 the NAACP—SCF seeks to recover $18,792.59 in attorneys', interns', and paralegals' expenses; $2,019.33 in photocopying and typing expenses; $1,000.00 in interns' fees actually paid; and $4,878.42 in fees and expenses for consultants. Under 28 U.S.C. § 1920, the NAACP—SCF seeks $11,062.19 in fees paid to court reporters; $507.16 for fees paid to the Clerk, the United States Marshall, and one witness; and $5,499.00 in printing costs. Mr. Lucas, on his own behalf, has filed affidavits detailing $3,699.18 in travel, photocopy, telephone, and postage expenses.

The NAACP–SCF and Mr. Lucas have documented and itemized their recoverable expenses and costs under 42 U.S.C. § 1988 and 28 U.S.C. § 1920. The expenses and costs appear reasonable. Defendants have no objections to the claimed expenses and costs.

Therefore, the NAACP—SCF is awarded $43,758.69 in costs and expenses and Mr. Lucas is awarded $3,699.18.

### D. Apportionment of Attorneys' Fees and Costs among Defendants.

The final question before the court is the proper apportionment of attorneys' fees and costs among defendants. In this court's order of January 13, 1983, concerning transportation services involved in the remedial plan, the court apportioned all future expenses of the Special Master as follows: State defendants—50 percent; BHASD—25 percent; Coloma Community Schools—12 percent; Eau Claire Public Schools—8 percent; and BCISD—5 percent. This court advised the parties at the September, 1985 status conference on attorneys' fees that such an apportionment would serve as the "starting point" for consideration of the apportionment of attorneys' fees and costs. Defendants, at the court's request, have now submitted briefs detailing defendants' positions concerning the proper apportionment of an award of attorneys' fees and costs.

■ The apportionment of fees and costs among multiple defendants is an unsettled area of the law. Generally, federal courts consider the following factors in determining the proper apportionment. First, the defendants' relative culpability is a factor. *See Jose P. v. Ambach*, 669 F.2d 865, 871 (2d Cir.1982). Second, the percentage of time that plaintiff devoted in its prosecution against each defendant is a factor. *See Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 960 (1st Cir.1984). *But see Mendoza v. Blum*, 602 F.Supp. 200, 203 (S.D.N.Y.1985). Third, the relative ability of each defendant to pay may affect the apportionment of a fee award. *See Grendel's Den, Inc.*, 749 F.2d at 960; *Rogers v. International Paper Co.*, 510 F.2d 1340, 1357 (8th Cir.1975), *vacated on other grounds*, 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975). Finally, the inter-relatedness of all issues and claims may cause a court to apportion a fee award equally or roughly equally among all defendants. *See Vulcan Society of Westchester County, Inc. v. Fire Department of White Plains*, 533 F.Supp.

1054, 1064 (S.D.N.Y.1982). These general factors guide the following discussion.

■ After reviewing defendants' briefs on the issue of apportionment, the many published opinions and a portion of the extensive record of this case, I find that each defendant's relative culpability should largely control the apportionment of the fee award. This lawsuit arose because of the *de jure* racial discrimination in the BHASD. Nonetheless, leadership requires responsibility. Here, State defendants were in positions of leadership with the responsibility of supervision over the conduct of all defendant school districts. *See* Mich. Const. Art. VIII, § 3. State defendants, however, failed in their leadership roles. Accordingly, as Judge Fox found, "the segregative actions and inactions of a local board of education are the actions of an agency of the State of Michigan and may be attributable to the [Michigan State Board of Education] and its Superintendent." *Berry,* 467 F.Supp. at 635. Further, the inaction and action of State defendants "helped to create and maintain the segregated conditions which exist[ed] in the schools of Benton Harbor." *Id.* at 658. When racial discrimination receives explicit and implicit approval by the State's highest educational body, the public hears one message: "separation by race in the context of public education is acceptable and should be facilitated." *Id.* at 651. In light of State defendants' active contribution to racial segregation in the Benton Harbor schools and failure to supervise defendant school districts, I find that the State defendants bear at least equal culpability with defendant BHASD.

Other considerations also determine the proper apportionment of the fee award. State defendants place great reliance upon the time expended by plaintiffs in prosecuting their claims against defendant BHASD. State defendants suggest that plaintiffs expended approximately 35 percent of the billed hours exclusively against defendant BHASD. I find, however, that at most only 26 to 27 percent of the billed hours can be exclusively attributed to defendant BHASD. Throughout this case the proofs and legal arguments presented commonly related to more than one defendant. Even the very early stages of this litigation occasionally involved defendants other than the BHASD. In addition, during the remedial stages of this litigation the BHASD generally sided with plaintiffs. Nonetheless, before plaintiffs moved in August, 1974 to add the other defendants the time expended by plaintiffs overwhelmingly related to the claims against the BHASD. Plaintiffs' counsel expended 1,359 hours before August, 1974. Those hours represent 26.7 percent of the total 5,079.98 hours expended by plaintiffs' counsel. Therefore, defendant BHASD should bear at least one quarter of the fee award. With respect to defendants Coloma, Eau Claire, and the BCISD, plaintiffs expended similar amounts of time. The petition for writ of certiorari to the Supreme Court by defendant Coloma, however, certainly caused plaintiffs' counsel to devote hours exclusively to claims brought against defendant Coloma.

The two final factors support an apportionment roughly similar to the current apportionment. First, the parties' relative abilities to pay, although a minor factor, affirms the current apportionment. Second, the inter-relatedness of claims and issues in this case supports an apportionment slightly more equal among all defendants than the current apportionment.

In conclusion, based on the record, the time sheets of plaintiffs' counsel, and defendants' briefs, I find that the proper apportionment of the attorneys' fees and costs among defendants is: State defendants—38 percent; BHASD—32 percent; Coloma Community Schools—14 percent; Eau Claire Public Schools—9 percent; and BCISD—7 percent.

## SUMMARY

In summary, I make the following findings. First, plaintiffs are a "prevailing party" within the meaning of 42 U.S.C.

§ 1988. Second, a reasonable award of attorneys' fees in this case is $729,614.50. Third, the award of attorneys' fees shall be divided among plaintiffs' counsel in the following fashion:

| ATTORNEYS | ATTORNEY'S FEES |
|---|---|
| Louis R. Lucas | $164,673.75 |
| Stuart J. Dunnings, Jr. | $129,030.00 |
| Elijah Noel, Jr. | $ 37,826.25 |
| Teresa Demchak | $ 46,663.50 |
| Thomas I. Atkins | $278,820.75 |
| Nathaniel R. Jones | $ 12,556.50 |
| NAACP—SCF [10] | $ 60,043.75 |
| | $729,614.50 |

Fourth, a reasonable award of costs and expenses (1) to the NAACP—SCF is $43,758.69 and (2) to Louis R. Lucas is $3,699.18.

Finally, a reasonable apportionment of the attorneys' fees and costs among defendants is: State defendants—38 percent; Benton Harbor Area School District—32 percent; Coloma Community Schools—14 percent; Eau Claire Public Schools—9 percent; and Berrien County Intermediate School District—7 percent.

| Row | | Atkins | Demchak |
|---|---|---|---|
| (1) | Total hours as NAACP–SCF Employee | 82.75 | 36.65 |
| (2) | Hours as NAACP–SCF Employee Pre–6/19/80 | 28.00 | 0.00 |
| (3) | Hourly rate | $150.00 | $ 75.00 |
| (4) | Product of Rows 2 and 3, Pre–6/19/80 Lodestar Amount | $ 4,200.00 | 0.00 |
| (5) | Upward Adjustment of 10% to Pre–6/19/80 Lodestar Amount | $ 4,620.00 | 0.00 |
| (6) | Hours as NAACP–SCF Employee Post–6/19/80 | 54.75 | 36.65 |
| (7) | Hourly Rate | $150.00 | $ 75.00 |
| (8) | Product of Rows 6 and 7, Post–6/19/80 Lodestar Amount | $ 8,212.50 | $2,748.75 |
| (9) | Amount of Attorney's Fee Award belonging to NAACP–SCF, Sum of Rows 5 and 8 | $12,832.50 | $2,748.75 |

**10.** The attorneys' fees awarded to the NAACP—SCF represent fees earned by Michael H. Sussman, Thomas I. Atkins, and Teresa Demchak while in the employ of the NAACP—SCF after 1980. *See supra* note 9.